UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
BRIDGET CAPOBIANCO, *et al*.,

                Plaintiffs,

-against-

THE CITY OF NEW YORK, *et al*.,

                Defendants.
-------------------------------------------------------------------

21-cv-6125 (LDH) (VMS)

## **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR <u>CLASS CERTIFICATION</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

I. PRELIMINARY STATEMENT ............................................................................................1

II. STATEMENT OF FACTS....................................................................................................5

III. LEGAL STANDARD...........................................................................................................8

IV. ARGUMENT.......................................................................................................................11

A. The Proposed Class Satisfies the Requirements of Rule 23(a).....................................4

    1. The Numerosity Requirement Has Been Satisfied ......................................................12
    2. Questions of Law and Fact are Common to the Proposed Class..................................12
    3. Typicality ....................................................................................................................15
    4. Adequacy of Representation .......................................................................................17

B. Plaintiffs Have Demonstrated Ascertainability...........................................................18

C. Plaintiffs Satisfy the Rule 23(b)(3) Requirements ......................................................18

    1. Predominance...............................................................................................................19
    2. Superiority....................................................................................................................20

        a. Interest in Individual Control ................................................................................20
        b. Other Pending Litigation.......................................................................................21
        c. Desirability of Concentration ................................................................................21
        d. Manageability .......................................................................................................22

D. The Proposed Class Satisfies the Requirements of Rule 23(b)(2) for Injunctive Relief .....22

E. Alternatively, The Proposed Class Satisfies the Requirements of Rule 23(c)(4) for Liability-Only Issue Certification ................................................................................24

V.  CONCLUSION ..................................................................................................................25

i

# TABLE OF AUTHORITIES

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*
No. 06-MD-1175 (JG) (VVP), 2014 U.S. Dist. LEXIS 180914, (E.D.N.Y. Oct. 15, 2014) .................... 10

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................. 23

*Baby Neal v. Casey*,
43 F.3d 48, 57 (3d Cir. 1994) ............................................................ 13, 23

*Baffa v. Donaldson*,
222 F.3d 52 (2d Cir. 2000) .................................................................... 17

*Benjamin v. Fraser*,
161 F. Supp. 2d 151 (S.D.N.Y. 2001) ..................................................... 12

*Benjamin v. Malcolm*,
803 F.2d 46 (2d Cir. 1986) .................................................................... 12

*Braggs v. Dunn*,
2:15-cv-601, 2016 U.S. Dist. LEXIS 167048 (M.D. Al. 2016) ...................... 23, 24

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010) ................................................................... 19

*Butler v Suffolk County*,
289 F.R.D. 80 (E.D.N.Y. 2013) ................................................. 8, 17, 19, 24

*Cano v. City of New York.*,
44 F. Supp. 3d 324 (E.D.N.Y. 2014) .......................................................... 2

*Chatman v Otani*,
No. 21-00268 (JAO-KJM), 2021 U.S. Dist. LEXIS 217443 (D. Haw. Nov. 10, 2021) .............. 8, 15, 16

*Cuzco v Orion Bldrs., Inc.*,
262 F.R.D. 325 (S.D.N.Y. 2009)……………………………………………………………........8

*Darnell v. Pineiro*,
849 F.3d 17 (2d Cir. 2017) ..............................................................passim

*Ddmb, Inc. v Visa, Inc.*,
No. 05-MD-1720 (MKB), 2021 U.S. Dist. LEXIS 249783 (E.D.N.Y. Sep. 27, 2021) ............................ 9

*Doe v. Kelly*,
  878 F.3d 710 (9th Cir. 2017)...............................................................................................12

*Ebin v. Kangaris Foods, Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ........................................................................................13

*Enea v. Bloomberg, L.P.*,
  No. 12-4656 (GBD), 2014 U.S. Dist. LEXIS 35613 (S.D.N.Y. Mar. 17, 2014) ...................14

*Fed. Defs. of New York Inc.v. Fed. Bureau of Prisons*,
  954 F.3d 118 (2d Cir. 2020)...................................................................................................5

*Floyd v City of NY*,
  283 F.R.D. 153 (S.D.N.Y. 2012) ........................................................................................22

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*,
   270 F.R.D. 150 (S.D.N.Y. 2010) .......................................................................................10

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
  301 F.R.D. 116 (S.D.N.Y. 2014) ..................................................................................24, 25

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
  317 F.R.D. 374 (S.D.N.Y. 2016) ........................................................................................10

*Gortat v. Capala Bros.*,
  949 F. Supp. 2d 374 (E.D.N.Y. 2013) ................................................................................12

*Hamilton v. Accu-tek*,
  935 F. Supp. 1307 (E.D.N.Y. 1996) ...................................................................................24

*Helling v. McKinney*,
  509 U.S. 25 (1993).................................................................................................................3

*Hill v. Cty.of Montgomery*,
  No. 9:14-cv-00933 (BKS/DJS), 2018 U.S. Dist. LEXIS 140305 (N.D.N.Y. Aug. 20, 2018)...17, 18, 19

*Ingles v City of N.Y.*,
  No. 01-CV-8279 (DC), 2003 U.S. Dist. LEXIS 2453 (S.D.N.Y. Feb. 18, 2003)...................8

*In re Initial Pub. Offerings Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006)...................................................................................................10

*Jabbar v. Fischer*,
   683 F.3d 54 (2d Cir. 2012)..................................................................................3

*Jacob v. Duane Reade, Inc.*,
   293 F.R.D. 578 (S.D.N.Y. 2013) ...................................................................24, 25

*Johnson v. Nextel Commc'ns Inc.*,
   780 F.3d 128 (2d Cir. 2015)) .............................................................................10

*Jolly v. Coughlin*,
   76 F.3d 468 (2d Cir. 1996)...............................................................................1, 5

*MacNamara v. City of New York*,
   275 F.R.D. 125 (S.D.N.Y. 2011) .......................................................................19

*Marisol A. by Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)...............................................................................13

*McGee v. Pallito*,
   2015 U.S. Dist. LEXIS 118690 .........................................................................23

*McNeil v. N.Y. City Hous. Auth.*,
   719 F. Supp. 233 (S.D.N.Y. 1989).....................................................................17

*Mendez v Radec Corp.*,
   260 F.R.D. 38 (W.D.N.Y. 2009).........................................................................8

*In re Nassau County Strip Search Cases*,
   461 F.3d 219 (2d Cir. 2006)...............................................................................24

*Nicholson v. Williams*,
   205 F.R.D. 92 (E.D.N.Y. 2001) .....................................................................13, 23

*In re Petrobras Sec. Litig.*,
   862 F.3d 250 (2d Cir. 2017) ...........................................................................9, 22

*Phillips Petrol. Co. v. Shutts*,
   472 U.S. 797 (1985)............................................................................................21

*Postawko v Missouri Dept. of Corr.*,
   910 F.3d 1030 (8th Cir. 2018)..............................................................................8

*Roman v. Wolf*,
   977 F.3d 935 (9th Cir. 2020)................................................................................6

*Scott v Quay*,
    338 F.R.D. 178 (E.D.N.Y. 2021) ...................................................................................passim

*Stinson. v. City of New York*,
    282 F.R.D. 360 (S.D.N.Y. 2012) .................................................................... 13, 14, 17

*United States v. Donato*,
    Nos. 03-cr-929-9, 05-CR-60-10 (NGG), 2020 WL 3642854 (E.D.N.Y. July 6, 2020) ...........................5

*United States v. Mongelli*,
    No. 02-cr-307 (NGG), 2020 U.S. Dist. LEXIS 146478 (E.D.N.Y. Aug. 14, 2020) ..............................5

*United States v. Porges*,
    No. 17-cr-431 (NGG), 2020 WL 350415 (E.D.N.Y. June 29, 2020)) ......................................5

*United States v. Skelos*,
    No. 15-cr-317 (KMW), 2020 U.S. Dist. LEXIS 64639 (S.D.N.Y. Apr. 12, 2020) ..............................5

*United States v. Williams*,
    No. 16-cr-526 (LGS), 2020 U.S. Dist. LEXIS 224698 (S.D.N.Y. Dec. 1, 2020) ....................................5

*Visa Check/Mastermoney Antitrust Litig. v Visa, United States*,
    280 F.3d 124 (2d Cir 2001).................................................................................8

*Walker v. Schult*,
    717 F.3d 119 (2d Cir. 2013)..............................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................................14

*Willey v. Kirkpatrick*,
    801 F.3d 51 (2d Cir. 2015)................................................................................3

## I.     PRELIMINARY STATEMENT

Plaintiffs, on behalf of themselves and all other similarly-situated persons who were detained pre-arraignment in the City of New York's Central Booking facilities (the "Class"), allege that the City of New York and officials and employees of the Police Department ("NYPD"), the Department of Citywide Administrative Services ("DCAS"), and the former Mayor's Office (collectively, "Defendants"), violated their rights under the Due Process Clause during the Class Period of February 2020, when the Covid-19 pandemic began in New York, to the present ("Class Period").

The Defendants subjected Plaintiffs and the Class to unconstitutional conditions of confinement by failing to provide pre-arraignment detainees in the City's Central Booking facilities with any protections from contracting Covid-19 during their confinement and allowing appalling jail conditions that provide a breeding ground for Covid-19, as well as being unconstitutional separate and apart from the spread of infectious disease. Despite other municipal officials who are fixated on preventing Covid-19 transmission among New York City residents, the Defendants have demonstrated deliberate indifference to preventing individuals, whom they consider to be criminals, from contracting Covid-19 while confined in the City's Central Booking facilities.  Defendants have also shown a disregard as to whether the Plaintiffs and the Class transmit Covid-19 to others.

Although "correctional officials have an affirmative obligation to protect inmates from infectious disease[,]" *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996), in the City's Central Booking facilities, the Defendants have created and maintained a policy, practice or custom of: (a) not providing detainees with masks; (b) not requiring detainees who bring their own masks to properly wear them over their nose and mouth; (c) holding detainees in overcrowded cells preventing them from being able to socially distance by six feet; (d) allowing jail staff to decide whether they wish to wear or not wear a mask; (e) failing to clean or sanitize the notoriously filthy cells, which the

Second Circuit described as "alarming and appalling" with respect to the Brooklyn Central Booking facility; (f) failing to provide detainees with the means to wash or disinfect their hands; (g) failing to take the temperature of detainees during the admission process; (h) failing to ask detainees during the admissions process if they have Covid-19 symptoms or were recently exposed to the virus; (i) not administering rapid Covid-19 tests to those detainees who exhibit symptoms of the virus; and (j) failing to segregate detainees who are suspected of having the virus from other detainees.

In addition to the absence of protections from contracting Covid-19, the cells in the City's Central Booking facilities are notoriously filthy and inhumane, which provide a breeding ground for viruses. These inhumane conditions have existed for decades and have been the subject of several lawsuits. To illustrate, the plaintiffs in *Cano v. City of New York*, 44 F. Supp. 3d 324 (E.D.N.Y.), brought claims challenging the unconstitutional conditions present in Brooklyn Central Booking ("BCB"), when they were held in the facility on separate dates from 2010 to 2013. The district court, after discovery, granted the defendants' motion for summary judgment. On appeal, under the caption, *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017), the Second Circuit reversed, stating that the "plaintiffs paint a picture of BCB that is *alarming and appalling*" and have "adduced *substantial evidence, much of it uncontroverted*, that they were subjected to *appalling conditions of confinement* to varying degrees and for various time periods." *Id.* at 26, 37 (emphasis added).

Despite the strong language by the Second Circuit in *Darnell*, the Defendants, both before and during the pandemic, have done nothing to improve the conditions in BCB or the Central Booking facilities in the other boroughs of the City. It is clear that a plaintiff need not have contracted Covid-19 or became ill from the other conditions in Central Booking to have a viable claim; jail conditions that present a significant *risk* to health are sufficient to state a constitutional claim. As stated in *Darnell*, "to establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must

prove that the defendant-official acted intentionally to impose the alleged condition, or *recklessly failed to act with reasonable care* to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, *or should have known*, that the condition posed an excessive *risk* to health or safety." *Id.* at 35  (emphasis added); *see also Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) ("prisoners may not be deprived of their basic human needs — *e.g*., food, clothing, shelter, medical care, and reasonable safety — and they may not be exposed to conditions that pose an unreasonable *risk* of serious damage to [their] future health") (emphasis added); *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015) ("Although the seriousness of the harms suffered is relevant to calculating damages and may shed light on the severity of an exposure, *serious injury is unequivocally not a necessary element* of an Eighth Amendment claim") (emphasis added). Moreover, "[i]t would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them. . . . [A] remedy for unsafe conditions need not await a tragic event." *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

Submitted with this motion are the declarations of the majority of the Plaintiffs in the caption, and class members Unique Harrison and Ryan Morant. These declarations show that the Defendants have failed to comply with the consent order, issued on January 6, 2022 (ECF no. 27), and the amended consent order issued on January 28, 2022 (ECF no. 35), after Plaintiffs moved for a temporary restraining order.  *See* Declaration of Jessica Williams (Anderson Decl., Ex. 10) (stating that when she was detained on August 15, 2022, BCB was overcrowded making social distancing impossible, detainees lacked sufficient access to masks, guards were not required to wear masks, there was no soap or hand sanitizer provided to detainees, the cells were not cleaned and sanitized, and detainees were not properly screened for Covid-19); Declaration of Rafael Hernandez (Ex. 7) (same conditions in BCB on January 1 and January 7, 2022 in BCB); Declaration of class member

3

Unique Harrison (Ex. 41) (same conditions in BCB on May 1, 2022); Declaration of Johnnie English (Ex. 23) (same conditions in BCB on February 14, 2022); Declaration of Javaas Webster (Ex. 33) (same conditions in BCB on January 13, 2022); Declaration of Darius Jones (Ex. 6) (same conditions in  BCB on March 29, 2022); Declaration of Khalifa Fall (Ex. 37) (same conditions in BCB on July 15, 2022); Declaration of Simon Viktorenko (Ex. 38) (same conditions in Staten Island Central Booking on January 15, 2022).  Further, as shown by the Declaration of Plaintiff Seymiah Campbell (Ex. 3), who was confined in BCB on December 15, 2021, Defendants did not change their unlawful practices after this case was filed on November 3, 2021, and the City and its high-level officials were served on November 5, 2021 (ECF nos. 9 & 10).  Unfortunately, this is not surprising because Defendants took no action to remedy the general "alarming and appalling" conditions of confinement after the Second Circuit's 2017 decision in *Darnell*.  The same conditions existed in substantial part when Plaintiffs were confined in Central Booking beginning in 2020.

The Declarations of Gary Abrams (Ex. 4), Rafael Hernandez (Ex. 7), Glendesha MacDonald (Ex. 16), Johnnie English (Ex. 23), Jessica Williams (Ex. 29), Simon Viktorenko, (Ex. 38), William Gorman (Ex. 36), and Jose Roman (Ex. 51), show that during the Covid-19 pandemic, detainees were not provided with masks in Central Booking.  But recognizing the dangers of what the detainees were exposed to in the jails, officers gave detainees masks right before they entered the courtroom for their arraignments in order to protect the Criminal Court Judge and the court staff.  The Court is presented here with a recalcitrant municipal government that intentionally refuses, or is unable, to comply with the orders of the federal courts and will defy the law when their unlawful conduct takes place in the shadows of the hidden jails known as Central Booking.

Plaintiffs now move for class certification, seeking damages and injunctive relief on behalf of a Class defined as:  All pre-arraignment detainees in City of New York's Central Booking facilities from February 3, 2020, to the present.

## II.    STATEMENT OF FACTS

The named Plaintiffs were detained pre-arraignment in the City's Central Booking facilities. In operating and overseeing these facilities, Defendants have failed to take reasonable measures to protect residents in their custody from Covid-19.  As a result, every detainee in these facilities suffers damages and faces a risk of serious harm, even death.  Defendants have also failed to take adequate measures to provide constitutional conditions of confinement in Central Booking, separate and apart from not providing protections from contracting Covid-19.

"Correctional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly*, 76 F.3d at 477.  Moreover, courts have recognized the dangers of Covid-19 in the jail and prison environment.  *See Fed. Defs. of New York Inc. V. Fed. Bureau of Prisons*, 954 F.3d 118, 135 (2d Cir. 2020) (acknowledging the "grave and enduring" risk posed by Covid-19 in the correctional context); *United States v. Skelos*, No. 15-cr-317 (KMW), 2020 U.S. Dist. LEXIS 64639, at *3 (S.D.N.Y. Apr. 12, 2020) ("Jails and prisons are powder kegs for infection"); *United States v. Mongelli*, No. 02-cr-307 (NGG), 2020 U.S. Dist. LEXIS 146478, at *7 (E.D.N.Y. Aug. 14, 2020) ("As this court has previously noted, the COVID-19 pandemic poses a serious health risk to this country's prison populations") (citing *United States v. Donato*, Nos. 03-cr-929-9, 05-CR-60-10 (NGG), 2020 WL 3642854, at *2 (E.D.N.Y. July 6, 2020) and *United States v. Porges*, No. 17-cr-431 (NGG), 2020 WL 350415, at *2 (E.D.N.Y. June 29, 2020)); *United States v. Williams*, No. 16-cr-526 (LGS), 2020 U.S. Dist. LEXIS 224698, at *4 (S.D.N.Y. Dec. 1, 2020) ("Courts have also recognized that individuals in confinement settings may be at a 'heightened risk of contracting COVID-19'").

The Ninth Circuit recently certified a class of inmates challenging unconstitutional living conditions during the Covid-19 pandemic where the government's failures "exposed *all* detainees to

an unnecessary risk of harm," as each inmate suffered the "same constitutional injury" when he or she is exposed to a single statewide policy or practice. *Roman v. Wolf*, 977 F.3d 935, 944–45 (9th Cir. 2020). In affirming the certification of a class of inmates, the Ninth Circuit noted that the government's common due process violations similarly exposed all detainees to unnecessary risk of harm, including the following violations:

> [cells] so crowded that social distancing to combat the spread of the novel coronavirus was impossible, detainees had inadequate access to masks, guards were not required to wear masks, there was not enough soap or hand sanitizer to go around, detainees were responsible for cleaning the facility with only dirty towels and dirty water, detainees were compelled to sleep with less than six feet of distance between them, and not all new arrivals were being properly quarantined or tested.

*Id.* at 943.

The same holds true here. Despite this Court's entry of a Consent Order and an Amended Consent Order in January, 2022 [ECF nos. 27 and 35], requiring Defendants, *inter alia*, to follow the most basic of the Covid-19 prevention guidelines issued by the U.S. Center for Disease Control ("CDC"), the declarations of recent detainees in Central Booking demonstrate that Defendants have refused to comply with this Court's Order and still fail to follow basic CDC guidelines for Covid-19 prevention. *See* Declaration of Jessica Williams (Anderson Decl., Ex. 10) (stating that when she was detained on August 15, 2022, BCB was overcrowded making social distancing impossible, detainees lacked sufficient access to masks, guards were not required to wear masks, there was no soap or hand sanitizer provided to detainees, the cells were not cleaned and sanitized, and detainees were not properly screened for Covid-19); Declaration of Rafael Hernandez (Anderson Decl., Ex. 7) (same conditions in BCB on January 1 and January 7, 2022); Declaration of Unique Harrison (Anderson Decl., Ex. 41) (same conditions in BCB on May 1, 2022); Declaration of Johnnie English (Anderson Decl., Ex. 23) (same conditions in BCB on February 14, 2022); Declaration of Javaas Webster (Anderson Decl., Ex. 33) (same conditions in BCB on January 13, 2022); Declaration of Darius Jones

6

(Anderson Decl., Ex. 6) (same conditions in BCB on March 29, 2022); Declaration of Khalifa Fall (Anderson Decl., Ex. 37) (same conditions in BCB on July 15, 2022); and Declaration of Simon Viktorenko (Anderson Decl., Ex. 38) (same conditions in Staten Island Central Booking on January 15, 2022).

Plaintiffs now move for Rule 23 certification of the Class of "all pre-arraignment detainees in City of New York's Central Booking facilities from February 3, 2020, to the present."  Since at least February 3, 2020, Defendants have been on notice of the Covid-19 virus and issued written "Guidelines for Prevention of Exposure to Novel Coronavirus," which set forth the "Basic Precautions" of "avoiding unnecessary exposure and maintaining a safe distance, wearing a mask . . . washing hands frequently and using hand sanitizers."  *See* NYC_000004, attached as Ex. 46 to the Anderson Decl.

On April 4, 2020, the Chairman of the State Commission of Correction issued a memorandum containing the "Center for Disease Control and Department Of Health Covid-19 Guidance Relevant to Correctional and Detention Facilities," which all Central Booking facilities were duty-bound to implement and follow.  *See* NYC_00280, attached as Ex. 47 to the Anderson Decl. The memorandum states, "[d]etention facilities are at greater risk for the spread of communicable disease, due to the number of individuals living in close proximity to one another, facilities must take all available precautions to minimize the risk of a Covid-19 outbreak."

The City has never complied with the most basic of precautions as set forth in these common written documents for preventing the spread of Covid-19 in its Central Booking facilities.  *Compare* Declaration of Chief Donna Jones In Opposition to Plaintiffs' Motion For Preliminary Injunction dated January 3, 2022 (ECF No. 42-1) (stating, *inter alia*, that the NYPD follows CDC, NYSDOH and DOHMH guidelines in implementing COVID-19 safety protocols with respect to Central

7

Booking facilities) with the contemporaneous declarations of detainees stating that the NYPD does not follow basic COVID-19 safety protocols. *See, e.g.,* accompanying Declarations of Plaintiffs and class members attached as Exs. 1 to 45 of the Anderson Decl.

Moreover, there have been no documents produced in this litigation, such as logbooks or reports, which would demonstrate the City's regular and routine compliance with the CDC Covid-19 prevention protocol for detainees in Central Booking.  Defendants continue to disregard the CDC protocol and the most basic of the COVID-19 prevention measures, in violation, *inter alia*, of this Court's Orders.

## III.    LEGAL STANDARD

"At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Rule 23(c)(1)(A).  Prison conditions cases are especially appropriate for class treatment.  *Scott v Quay*, 338 F.R.D. 178 (E.D.N.Y. 2021); *Butler v Suffolk County*, 289 F.R.D. 80, 103 (E.D.N.Y. 2013) (certifying damages and injunctive classes); *Ingles v City of N.Y.*, No. 01-CV-8279 (DC), 2003 U.S. Dist. LEXIS 2453 (S.D.N.Y. Feb. 18, 2003); *Postawko v Missouri Dept. of Corr.*, 910 F.3d 1030 (8th Cir. 2018); *Chatman v Otani*, No. 21-00268 (JAO-KJM), 2021 U.S. Dist. LEXIS 217443 (D. Haw. Nov. 10, 2021) (Covid-19 settlement class).

"'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'"  *In re Visa Check/Mastermoney Antitrust Litig. v Visa, United States*, 280 F.3d 124, 133 (2d Cir 2001); *see Caridad v Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999); *Cuzco v Orion Bldrs., Inc.*, 262 F.R.D. 325, 335 (S.D.N.Y. 2009); *Mendez v Radec Corp.*, 260 F.R.D. 38, 44 (W.D.N.Y. 2009).

"'Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification.'" *Ddmb, Inc. v Visa, Inc.*, No. 05-MD-1720 (MKB), 2021 U.S. Dist. LEXIS 249783, at *137 (E.D.N.Y. Sep. 27, 2021) .

For Rule 23 class certification, Plaintiffs must satisfy four initial requirements: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Rule 23(a). In addition, the Second Circuit has "'recognized an implied requirement of ascertainability in Rule 23,' which demands that a class be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017).

Once the requirements of Rule 23(a) are met, Plaintiffs also must satisfy one of the categories in Rule 23(b). Here, Plaintiffs seek to certify the Class for purposes of injunctive relief under Rule 23(b)(2) and compensatory relief under Rule 23(b)(3), or, in the alternative, to certify the issue of liability under Rule 23(c)(4), should the Court determine that compensatory damages require an individualized inquiry.

Certification under Rule 23(b)(2) is appropriate where the defendant "has acted or refused to act on grounds generally applicable to the class," entitling class members to "final injunctive relief." Rule 23(b)(2). The court may certify a Rule 23(b)(3) class if it "finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The party seeking class certification bears the burden of satisfying the requirements of Rule 23 by a preponderance of the evidence. *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 384 (S.D.N.Y. 2016). Thus, "a court must 'probe behind the pleadings before coming to rest on the certification question,' satisfying itself that Rule 23 compliance may be demonstrated through 'evidentiary proof.'" *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015)). "[T]his inquiry may sometimes overlap with merits issues, though the determination as to a Rule 23 requirement is not binding on the trier of fact in its determination of the merits." *Id.* This is so because the overarching purpose is "not to adjudicate the case . . . [but] to select the method best suited to adjudication of the controversy fairly and efficiently.'" *In re Air Cargo Shipping Servs. Antitrust Litig*. No. 06-MD-1175 (JG) (VVP), 2014 U.S. Dist. LEXIS 180914, at *176 (E.D.N.Y. Oct. 15, 2014), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 90402, at *1 (E.D.N.Y. July 10, 2015).

"Furthermore, in order to certify a class, the proponent of class certification need not show that the common questions 'will be answered, on the merits, in favor of the class.'" *Johnson*, 780 F.3d at 138. While the requirements "are to be applied liberally," the court must still "conduct a rigorous analysis of the criteria set forth in Rule 23." *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 153-54 (S.D.N.Y. 2010). "A district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006).

Plaintiffs meet all of the requirements of Rule 23(a), and also satisfy Rule 23(b)(2) for an injunctive relief class, Rule 23(b)(3) for a compensatory damages class, and alternatively, Rule 23(c)(4) for an issue certification class.

10

## IV.  ARGUMENT

"A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  Under the Fourteenth Amendment, "to establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.'"  *Id*. at 30 . "[C]onditions of confinement may be aggregated to rise to the level of a constitutional violation, but 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).  A pretrial detainee must prove "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 29, 35.

Plaintiffs have made the necessary showing at the class certification stage to show that Defendants' actions violate the Plaintiffs' and proposed Class Members' rights under the Constitution.  It is not objectively reasonable to confine pre-trial detainees in cramped, unsanitary, conditions with poor ventilation and insufficient or no access to face masks, hand sanitizer, or soap during the Covid-19 epidemic – a blatant violation of CDC protocol.  .

Moreover, Plaintiffs have shown that Defendants have subjected them and the Class members to unconstitutional conditions of confinement, separate and apart from protections from Covid-19.  The Plaintiffs' Declarations submitted herewith demonstrate that the detainees' basic human needs are not being met in Central Booking and that the detainees must withstand hours in overcrowded, malodorous cells that are filled with garbage, feces, urine and other human waste,

11

infested with roaches and other insects, and without adequate edible food and water, toilet facilities and a place to sleep, other than the hard floor or bench.  These inhumane conditions have existed for decades and have been the subject of several lawsuits, one in which the Second Circuit described BCB as "*alarming and appalling.*"  *Darnell*, 849 F.3d at 26, 37 (emphasis added).  In *Darnell*, the Second Circuit noted that the plaintiffs were subjected to "(1) Overcrowding; (2) Unusable Toilets; (3) Garbage and Inadequate Sanitation; (4) Infestation; (5) Lack of Toiletries and Other Hygienic Items; (6) Inadequate Nutrition; (7) Extreme Temperatures and Poor Ventilation; (8) Deprivation of Sleep; and (9) Crime and Intimidation."  *Id.* at  23; *see also Benjamin v. Fraser*, 161 F. Supp. 2d 151 (S.D.N.Y. 2001) (similar conditions at Rikers Island); *Benjamin v. Malcolm,* 803 F.2d 46, 54 (2d Cir. 1986) ("[T]he record supports the existence of conditions [at Rikers Island] meeting well-established standards for issuance of preliminary relief."); *Doe v. Kelly*, 878 F.3d 710, 715 (9th Cir. 2017) ("[D]etention facilities must provide individuals held overnight with beds and mattresses, and, thus, the absence of either violates the detainees' due process rights."); *id.* at 716 ("[A] sanitary environment is a basic human need that must be met by all penal institutions.").  The accompanying Declarations show that Plaintiffs and the Class members were subjected to most, if not all, of the nine conditions set forth in *Darnell.*

### A. The Proposed Class Satisfies the Requirements of Rule 23(a).

### 1. The Numerosity Requirement Has Been Satisfied.

A party seeking class certification must demonstrate that "the class is so numerous that joinder of all members is impracticable."  Rule  23(a)(1)  While there is "no magic minimum number" to establish numerosity, courts in the Second Circuit generally presume that a class consisting of 40 or more members is sufficiently numerous.  *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 383 (E.D.N.Y. 2013), *aff'd,*  568 Fed. Appx. 78 (2d Cir. 2014).

At the hearing on Plaintiffs' motion for a TRO on January 4, 2022, Donna Jones, Commanding Officer of the NYPD's Criminal Justice Bureau, which oversees the Central Booking facilities, told the Court that the City processes approximately 250 individuals each day in Central Bookings, most of them (approximately 185) in Brooklyn.  As the Class involves detainees from February 2020 to the present, the Class would encompass thousands of individuals, easily satisfying the numerosity requirement.  *Scott*, 338 F.R.D. at 187  (numerosity "is presumed at a level of 40 members").

### 2. Questions of Law and Fact are Common to the Proposed Class.

Rule 23(a)(2) requires "questions of law or fact that are common to the class." *Id.*  "There is an assumption of commonality where plaintiffs seek certification of an injunctive class under Rule 23(b)(2) to right alleged constitutional wrongs." *Nicholson v. Williams,* 205 F.R.D. 92, 98 (E.D.N.Y. 2001); *see also Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994) ("(b)(2) classes have been certified in a legion of civil rights cases where commonality findings were based primarily on the fact that defendant's conduct is central to the claims of all class members irrespective of their individual circumstances and the disparate effects of the conduct"); 7A Charles Wright & Arthur R. Miller, Federal Practice and Procedure, § 1763, at 201 (1986) ("Injunctive actions by their very nature often present common questions satisfying Rule 23(a)(2)").

A standardized course of conduct affecting all class members generally satisfies the requirement.  *Ebin v. Kangaris Foods, Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014).  "The commonality requirement is met if plaintiffs' grievances share a common question of law or fact." *Marisol A. by Forbes v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997).  "A court may find a common issue of law even though there exists some factual variation among class members' specific grievances." *Stinson v. City of New York*, 282 F.R.D. 360, 369 (S.D.N.Y. 2012).

Class plaintiffs only need to identify a single common question capable of being answered on a class-wide basis whose resolution is central to the validity of each claim.  *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 359 (2011).  The requirement thus imposes a "low hurdle." *In re Facebook, Inc.*, 312 F.R.D. 332, 342 (S.D.N.Y. 2015); *see also Enea v. Bloomberg, L.P.*, No. 12-4656 (GBD), 2014 U.S. Dist. LEXIS 35613, at *8 (S.D.N.Y. Mar. 17, 2014) ("[C]ommonality has never been understood to require that all issues must be identical as to each member, but rather [to] require[] that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment").  In civil rights cases like this, the "fact that the claims of the proposed class stem from the same alleged unconstitutional conduct of the defendants proves the existence of common questions of law or fact."  *Stinson,* 282 F.R.D. at 369.

To satisfy commonality, Plaintiffs must show "there is a common contention that can 'drive the resolution of the litigation' because 'determination of its truth or falsity will resolve an issue that central to the validity of each one of the claims in one stroke.'" *Scott*, 338 F.R.D. at 187. "The critical issue is whether there are common questions that demonstrate 'the capacity of a class-wide proceeding to generate common *answers*' bearing on the claims of the class members. Only one such common question is needed to 'unite all of the plaintiffs' claims' and satisfy commonality."  *Id*. . Plaintiffs satisfy the commonality requirement.    Since February 2020, Defendants have been on notice of the "Guidelines for Prevention of Exposure to Novel Coronavirus," which set forth the "Basic Precautions" of "avoiding unnecessary exposure and maintaining a safe distance, wearing a mask . . . washing hands frequently and using hand sanitizers."  *See* NYC_000004, attached as Ex. 46 to the Anderson Decl.    Nevertheless, Defendants subjected Plaintiffs and the Class to conditions of confinement that failed to provide basic protections from contracting Covid-19 in holding cells, allowed other jail conditions that fostered a breeding ground for Covid-19, and subjected detainees to the unlawful conditions of

confinement described by the Second Circuit in *Darnell*.  These adverse conditions were experienced by all the named Plaintiffs. *See* Amended Complaint at ¶ 3.  These allegations in the Complaint are amply supported by the accompanying Declarations of Plaintiffs and Class members.

"The resolution of these issues will in turn bear on the ultimate factual question of whether defendants' conduct . . . breached the duty of care owed to class members while they were incarcerated at the City's detention facilities." *Scott*, 338 F.R.D. at 187.  While members of the class were detained at different facilities, commonality is still satisfied even if policies differ in minor respects from facility to facility because an individual's custody status or their placement at a particular Central Booking facility should not render that individual more or less at risk of contracting a potentially lethal virus.  *See Chatman*, 2021 U.S. Dist. LEXIS 130465, at *21-22 (finding Rule 23 commonality requirement satisfied based on the defendant's alleged failure to comply with its Covid-19 Response Plan and the resulting harm to detainees and rejecting defendant's challenge that its alleged failure to implement policies would require a fact intensive analysis of each facility and/or detainee).

### 3. Typicality.

"Rule 23(a)(3) requires the movant to show that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'  Typicality 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'  Commonality and typicality 'tend to merge into one another, so that similar considerations animate analysis' of both prerequisites.  '[M]inor variations in the fact patterns underlying the individual claims' will not defeat typicality where 'plaintiffs allege that their injuries derive from a unitary course of conduct by a single system.'" *Scott*, 338 F.R.D. at 188.

Every Plaintiff identifies all of the conditions of confinement during the Class Period that predicate this lawsuit. In their Declarations, Plaintiffs state that Defendants have not complied with Covid-19 protocols by, for example, not screening detainees for Covid-19, not providing detainees with masks, not requiring detainees or staff to wear their masks, except when appearing before the judge, preventing detainees from social distancing by 6 feet, failing to ventilate or sanitize the holding cells, and denying detainees the tools to prevent the spread of Covid-19, such as soap and hand sanitizer. *Compare Scott*, 338 F.R.D. at 188 ("All the alleged violations resulted from the action or inaction of MDC and BOP officials charged with ensuring the care and safety of those incarcerated in the facility's West Building. Even assuming that there are minor variations in how these alleged violations affected individual claimants, that would not be enough to conclude that the lead plaintiffs' claims are atypical of the proposed class").

Plaintiffs' claims are typical of the Class that they seek to represent. Each member of the Class: (1) is an individual who is or has been detained at a Central Booking facility; (2) has suffered unsanitary, crowded, and poorly ventilated conditions without access to face masks, hand sanitizer or soap; (3) subjected to the unconstitutional conditions of confinement at issue in *Darnell; and* (4) faced or faces a substantial risk to their future health. The claims of Plaintiffs and the Class arise from the same failure of Defendants to implement adequate public health measures in response to Covid-19 in accordance with standard CDC protocol and to correct the conditions at issue in *Darnell*. The overarching nature of the threat of Covid-19 to every person confined in the City's Central Booking facilities satisfies typicality for the Class. *See Chatman*, 2021 U.S. Dist. LEXIS 130465, at *24-26 (finding the typicality requirement satisfied where plaintiffs and the proposed class are all "individuals incarcerated or detained at DPS facilities who face a substantial risk of contracting Covid-19 if measures are not immediately implemented

16

and their claims concern Defendant's alleged failure to effectuate adequate health measures in response to Covid-19"); *Hill v. Cty. of Montgomery*, No. 9:14-cv-00933 (BKS/DJS), 2018 U.S. Dist. LEXIS 140305, at *25 (N.D.N.Y. Aug. 20, 2018) (commonality satisfied by common question of whether defendants "through a policy or practice of allowing calorically and nutritionally inadequate food to be served to inmates on a continuous basis, subjected Plaintiffs, and other inmates, to conditions that posed 'an unreasonable risk or serious damage to [their] future health'"); *Butler* 289 F.R.D. at 98 ("Whether the County was aware of and deliberately indifferent to the conditions at the [jail] is a common question subject to class-wide resolution"); *Stinson,* 282 F.R.D. at 369 (finding commonality where plaintiffs alleged that they were victims of a pattern and practice set and enforced by defendants to stop, search, seize, arrest and issue summonses to individuals without probable cause in response to a requirement and constant pressure to meet a summons quota); *McNeil v. N.Y. City Hous. Auth.*, 719 F. Supp. 233, 254 (S.D.N.Y. 1989) (finding commonality where "[t]he claims of all proposed class members derive from the same . . . policies and procedures and are based on the same legal theories").

### 4. Adequacy of Representation.

Rule 23(a)(4) presents two questions, namely "whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Baffa v. Donaldson,* 222 F.3d 52, 60 (2d Cir. 2000). Plaintiffs' and Class members' Declarations demonstrate there is no conflict of interest between Plaintiffs and the Class of detainees they seek to represent. Plaintiffs' Counsel are also highly-experienced in handling federal civil rights claims, and class actions in particular,

17

as set forth in the firm resumes of Plaintiffs' counsel submitted herewith in support as Exhibits 48 through 50 to the Anderson Declaration.[1]

### B.   Plaintiffs Have Demonstrated Ascertainability.

"The implied requirement of ascertainability tests whether a class is 'defined by objective criteria that are administratively feasible [such that] identifying its members would not require a mini-hearing on the merits of each case.'  This is not a heavy burden because the requirement is 'designed only to prevent the certification of a class whose membership is truly indeterminable.'"  *Scott*, 338 F.R.D. at 186.

Like the certified class in *Scott v. Quay*, Plaintiffs satisfy the ascertainability test because "[m]embership is governed by the objective criteria" of detention at the City's Central Booking facilities from February 2020 through the present.  338 F.R.D. at 186.  "It will therefore be administratively feasible to 'determine whether a particular individual is a member' of the class."  *Id.* at 186-87; *see also Hill*, 2018 U.S. Dist. LEXIS 140305, at *34 (ascertainability satisfied where "the class definition contains only objective criteria: incarceration at the MCJ for two weeks or more during the relevant time period").

### C.   Plaintiffs Satisfy the Rule 23(b)(3) Requirements.

"Under Rule 23(b)(3), to maintain a class action, the plaintiffs must show (1) predominance; and (2) superiority, which incorporates four factors: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the

---

[1] The resumes of Plaintiffs' counsel were submitted originally in support of Plaintiffs' motion for preliminary certification, which was denied as moot on August 26, 2022, in light of the Consent and Amended Consent Orders, dated January 6, 2022 and January 27, 2022 (ECF 27 and 35).  However, because the Declarations of recent detainees submitted herewith show Defendants are not complying with the Consent and Amended Consent Orders, the matter is ripe for class certification.

particular forum; and (d) the likely difficulties in managing a class action." *Scott*, 338 F.R.D. at 190.

### 1. Predominance.

To find predominance, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." *Scott*, 338 F.R.D. at 189. "'[A] plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof.'" *Id*. Predominance is determined by examining "the elements of the claims and defenses to be litigated." *Id*.

"[W]here plaintiffs are 'allegedly aggrieved by a single policy of the defendants' and there is a 'strong commonality of the violation and the harm,' this 'is precisely the type of situation for which the class action device is suited.'" *Brown v. Kelly,* 609 F.3d 467, 484 (2d Cir. 2010) (affirming determination that common issues predominated in class challenging the defendants' continued enforcement of a loitering law that Second Circuit had found unconstitutional); *Butler*, 289 F.R.D. at 102 (finding the question of whether the conditions at the jails were "cruel and inhuman in violation of the Eighth and Fourteenth Amendments" and whether the defendants "were deliberately indifferent predominate[d] over the issues subject to individualized proof -namely the extent of each class members' damages"); *MacNamara v. City of New York,* 275 F.R.D. 125, 146 (S.D.N.Y. 2011) (finding common liability issues predominate in claim based upon policy or practice of conducting mass arrests); *Hill*, 2018 U.S. Dist. LEXIS 140305 at *43 (finding common issues predominate as to whether Defendants "had a policy or practice of subjecting detainees to an unlawful condition of confinement in violation of the Eighth and Fourteenth Amendment").

Since February 2020, Defendants have subjected Plaintiffs and the Class to inhumane conditions of confinement when they were pre-arraignment detainees in the Central Booking

facilities.  The accompanying Declarations show these adverse conditions were experienced by all named Plaintiffs and their fellow detainees.  *Compare Scott*, 338 F.R.D. at 190 ("these claims all involve allegations of negligence against the same actors, arising from the same conduct, affecting claimants who were all housed in the same building at the same time in the same or similar ways.  These issues are thus 'susceptible to generalized, class-wide proof,' and resolving them on a class-wide basis 'would achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated.'  Resolving the truth and extent of defendants' wrongdoing will be useful to the class as a whole").

To the extent some Plaintiffs may have suffered unique injuries from their experiences in the Central Booking facilities, these issues will not predominate over the common issues relevant to all Plaintiffs.  "'Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues.'  And '[t]here are a number of management tools available to a district court to address [these] issues' should they arise, including trial bifurcation, assignment to a magistrate judge or special master for damages calculations, or decertification and notice after a liability determination."  *Scott*, 338 F.R.D..at 190

### 2. Superiority.

As demonstrated above, four factors define superiority under Rule 23(b)(3), although this list is not exhaustive.  *Scott*, 338 F.R.D. at 190

### a. Interest in Individual Control.

While courts generally assume that each plaintiff is entitled to his or her own day in court, "[t]hat preference may be outweighed in some cases, such as where the possible recovery for each individual complainant is small relative to the cost of litigation."  *Scott*, 338 F.R.D. at 191 ("The policy at the very core of the class action mechanism is to overcome the problem that

small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights"). Like *Scott* (which involved "inhumane" conditions at the Metropolitan Detention Center resulting from a power outage), that is the case here, as "the potential recovery for each individual claimant is likely to be small relative to the cost and complexity of litigating those claims against the … government. That is particularly true because the proposed class is composed of incarcerated or recently incarcerated people, who are likely to lack the resources or legal training to vindicate their rights." *Id.* (citing *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 813 (1985) (use of the class action device is appropriate where "[t]he plaintiff's claim may be so small, or the plaintiff so unfamiliar with the law, that he [or she] would not file suit individually")).

### b. Other Pending Litigation.

Plaintiffs are not aware of any pending cases involving the City's deliberate indifference to Covid-19 exposure of detainees in its Central Booking facilities during the relevant time period. *See Scott*, 338 F.R.D. at 191 ("The 'small number of individual suits against defendants . . . indicat[es] a lack of interest in individual prosecution.' Finally, class members who do retain such an interest will have the opportunity to opt out of the class") .

### c. Desirability of Concentration.

This factor "promote[s] judicial economy and uniformity of decisions by 'simplify[ing] and streamlin[ing] the litigation process. *Scott*, 338 F.R.D. at 191. Since BCB is where the majority of Plaintiffs and the putative Class have been detained (and where Class members will be detained in the future), as well as the other facilities in Queens and Staten Island, are located in this district, it is desirable to concentrate the litigation in the Eastern District of New York.

**d. Manageability**.

"'The fourth factor focuses on whether class action litigation would be manageable under the circumstances. . . . [F]ailure to certify an action . . . on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule.'" *Scott*, 338 F.R.D. at 191. Here, as in *Scott*, "there are no significant manageability challenges present in this case. To the contrary, litigating the claims in this case on a class basis is likely to be more efficient and manageable than handling them individually. As discussed above, the predominant issues of law and fact affecting each plaintiff's claims are either similar or identical. To the extent that unforeseen issues do arise, they can be addressed using normal trial management tools." *Id*.

If the requirements for class certification are met, a district court should not hesitate to certify a damages class even if the class has tens of thousands of members. As the Second Circuit has instructed, "[t]hough a court may not ignore concerns about the manageability of a putative class action, it may be that challenges of administrative feasibility are most prevalent in cases 'in which there may be no realistic alternative to class treatment,' ..., underscoring the importance of a comparative inquiry. This concern is particularly acute in light of our admonition that 'failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule.'" *In re Petrobras Sec. Litig.*, 862 F.3d at 268; *see Floyd v City of NY*, 283 F.R.D. 153, 172 (S.D.N.Y. 2012) (certifying a class with "well over one hundred thousand" members).

**D. The Proposed Class Satisfies the Requirements of Rule 23(b)(2) for Injunctive Relief.**

Rule 23(b)(2) allows class treatment where the alleged wrongdoer "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Id*. The

fundamental characteristic of a class properly certified under Rule 23(b)(2) is "the indivisible nature of the injunctive or declaratory remedy warranted - the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 359.  Rule 23(b)(2) thus applies "when a single injunction or declaratory judgment would provide relief to each member of the class." *Id*.  Civil rights class actions are "prime examples" of the type of case encompassed by Rule 23(b)(2). See *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

Rule 23(b)(2) classes originated as a tool to manage civil rights cases, and "[s]everal courts in the Second Circuit have found Rule 23(b)(2) satisfied when the nature of the relief sought by plaintiffs is injunctive and would benefit all class members."  *See Nicholson*, 205 F.R.D. 92, 99 (E.D.N.Y. 2001) (collecting authorities).  Indeed, "Rule 23(b)(2) has been liberally applied in the area of civil rights, including suits challenging conditions and practices at various detention facilities."  *Braggs v. Dunn*, 2:15-cv-601, 2016 U.S. Dist. LEXIS 167048, *150-151 (M.D. Al. 2016); *see also* Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1776 (3d ed.) (discussing the range of civil-rights actions certified pursuant to Rule 23(b)(2) and explaining that "the class suit is a uniquely appropriate procedure in civil-rights cases").  Indeed, some courts have gone so far as to say that the rule's requirements are "almost automatically satisfied in actions primarily seeking injunctive relief."  *Baby Neal*, 43 F.3d at 58.

Plaintiffs allege that they and the other members of the Class were and continue to be subjected to Defendants' unconstitutional practices and policies of failing to follow the CDC's Covid-19 protocols for detainees and the conditions of confinement at issue in *Darnell*.  See accompanying Declarations of Plaintiffs and Class members.  Such allegations are archetypal of classes that have been certified under Rule 23(b)(2).  *See McGee*, 2015 U.S. Dist. LEXIS 118690, at *10 ("Whether the prisons' constant illumination policy violates the Eighth

Amendment rights of prisoners is an appropriate question for class treatment"); *see also Butler*, 289 F.R.D. at 101 (certifying a Rule 23(b)(2) class of prisoners challenging constitutionality of prison conditions); *Braggs*, 2016 U.S. Dist. LEXIS 167048, at *159-160 ("If the court grants relief, it will do so across the board, in one fell swoop. This relief will ensure that the statewide prison mental-health care system, with which all class members interact, is not operated pursuant to policies and practices that subject all prisoners to a substantial risk of serious harm. This is exactly the kind of case for which Rule 23(b)(2) was intended."). Accordingly, all of the requirements for Rule 23(b)(2) class certification are met here.

### E. Alternatively, The Proposed Class Satisfies the Requirements of Rule 23(c)(4) for Liability-Only Issue Certification.

Rule 23(c)(4) provides that: "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." "[A] court may employ Rule 23(c)(4)[] to certify a class on a particular issue even if the action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement." *In re Nassau County Strip Search Cases.*, 461 F.3d 219, 225 (2d Cir. 2006); s*ee also, Jacob v. Duane Reade, Inc*., 293 F.R.D. 578, 589 (S.D.N.Y. 2013) (granting Rule 23(c)(4) class certification for a liability only class), *aff'd* 602 Fed. Appx. 3 (2d Cir. 2015); *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co*., 301 F.R.D. 116, 142 (S.D.N.Y. 2014) (same). Should this Court find the proposed Class does not meet the predominance requirement for damages purposes, it should certify a Rule 23(c)(4) class for liability purposes only.

Certification for liability purposes will clearly advance the litigation in a meaningful way. Unlike a case in which a class proves, for example, that "defendants collectively breached a duty, [but] must still establish that this breach caused each plaintiff's injury," *Hamilton v. Accu-tek*, 935 F. Supp. 1307, 1332 (E.D.N.Y. 1996) (Weinstein, J.), the resolution of the common

questions, which include whether detainees were denied basic Covid-19 prevention measures and otherwise sanitary conditions of confinement, if proved, will only leave the remaining question of how much each individual is owed.  This instance is one in which the certification of the liability class may be particularly appropriate. *See e.g. Fort Worth Employees' Ret. Fund*, 301 F.R.D. at 142 ("even if individualized issues predominate the issue of damages, the court believes that common questions nonetheless predominate in this case because common questions will govern the more difficult, threshold liability issues").

## V.  CONCLUSION

As Plaintiffs satisfy the requirements of Rule 23(a), 23(b)(2), and 23(b)(3), and, in the alternative Rule 23(c)(4), this motion for class certification should be granted.

Dated:  September 16, 2022

Respectfully submitted,

*/s/ Richard Cardinale*

_____
RICHARD CARDINALE
Attorney at Law
26 Court Street, Suite # 1507
Brooklyn, New York 11201
(718) 624-9391

STEPHEN BERGSTEIN
BERGSTEIN & ULLRICH
5 Paradies Lane
New Paltz, New York 12561
(845) 469-1277

CATHERINE E. ANDERSON
JASON SOLOTAROFF
GISKAN SOLOTAROFF & ANDERSON LLP
90 Broad Street, 2nd Floor
New York, New York 10004
(212) 847-8315

*Attorneys for Plaintiffs and the Class*

25