21-cv-6125 (LDH) (VMS)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CAPOBIANCO *et al.*,

Plaintiffs,

- against -

THE CITY OF NEW YORK *et al.*,

Defendants.

## OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Mark G. Toews*
*Tel:  (212) 356-0871*
*Matter No. 2021-034369*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iiiii

PRELIMINARY STATEMENT .................................................................................. 1

BACKGROUND ....................................................................................................... 2

ARGUMENT

POINT I

THE PROPOSED CLASS FAILS TO MEET THE
RULE 23(A) REQUIREMENTS ................................................................ 5

A.   The Proposed Class Fails to Meet the
Commonality and Typicality Requirements ................................... 6

1.   Plaintiffs Fail to Meet the
Commonality & Typicality
Requirements Because They Do Not
Allege a Standardized Course of
Conduct ................................................................................ 6

2.   Plaintiffs Fail to Meet the
Commonality & Typicality
Requirements Because There Are
Too Many Individualized Variables
Differentiating Each Plaintiff's
Claims ................................................................................. 10

POINT II

THE PROPOSED CLASS FAILS TO MEET THE
REQUIREMENTS OF RULE 23(B)(3) ................................................... 14

A.   Individualized Issues Regarding Liability
and Damages Predominate Over Common
Issues .......................................................................................... 14

B.   The Differences Between Class Members
Render a Class Action an Inferior Method of
Adjudicating This Controversy .................................................... 21

**Page**

POINT III

      THE PROPOSED INJUNCTIVE CLASS CANNOT
      BE MAINTAINED UNDER RULE 23(B)(2)............................................22

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

**Pages**

*Aboubakar et al. v. City of New York et al.*,
   20-CV-1716 (NGG) (CLP) ....................................................................3

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 523-24 (1997) ......................................................................15

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013) .......................................................................15

*Berni v. Barilla S.p.A*,
   964 F.3d 141 (2d Cir. 2020) ....................................................23, 24, 25

*Brennan et al. v. City of New York et al.*,
   19-CV-2054 (NGG) (CLP) ..................................................................3

*Brown v. Kelly,*
   609 F.3d 467 (2d Cir. 2010) ...............................................................20

*Butler v. Suffolk County,*
   289 F.R.D. 80 (E.D.N.Y. 2013) ..........................................................20

*Cano v. City of New York,*
   13-cv-3341 (E.D.N.Y. 2013), ECF 41 .................................................11

*Capobianco et al. v. City of New York et al.,*
   (April 8, 2022) .....................................................................................4

*Caraballo v. Dep't of Corr. City of New York*,
   2022 WL 16555313 (S.D.N.Y. Oct. 31, 2022) ...................................18

*Chatman v. Otani,*
   2021 U.S. Dist. Lexis 130465 (D. Haw. 2021).....................................8

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)..............................................................................15

*Darnell v. Pineiro,*
   849 F.3d 17 (2d Cir. 2017)....................................................... *passim*

*Dorce v. City of New York,*
   2 F.4th 82 (2d Cir. 2021) .............................................................23, 24

*Ebin v. Kangadis Food Inc.*,
   297 F.R.D. 561 (S.D.N.Y. 2014) ......................................................6, 8

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)................................................................4

*Glatt v. Fox Searchlight Pictures, Inc.*,
   811 F.3d 528 (2d Cir. 2016).......................................................15

*Grossman v. Simply Nourish Pet Food Co. LLC*,
   516 F. Supp. 3d 261 (E.D.N.Y. 2021) .........................................23

*Herbert v. Smith*,
   2021 WL 3292263 (S.D.N.Y. Aug. 2, 2021) .................................18

*Hill v. County of Montgomery*,
   2018 WL 3979590 (N.D.N.Y. Aug. 20, 2018) ..............................20

*Hyland v. Navient*,
   48 F.4th 110 (2d Cir. 2022) ........................................23, 24, 25

*In re Initial Pub. Offering Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006).........................................................4

*Jacob v. Duane Reade, Inc.*,
   293 F.R.D. 578 (S.D.N.Y. 2013),
   *aff'd*, 602 F. App'x 3 (2d Cir. 2015) ..........................................22

*Johnson v. Nextel Commc'ns Inc.*,
   780 F.3d 128 (2d Cir. 2015).......................................................4

*LaReau v. MacDougall*,
   473 F.2d 974 (2d Cir. 1972)......................................................18

*Lewis v. Casey*,
   518 U.S. 343 (1996)...............................................................24

*Liberian Cmty. Ass'n of Connecticut v. Lamont*,
   970 F.3d 174 (2d Cir. 2020).............................................22-23, 24

*In re LIBOR-Based Fin. Instrument Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018).........................................21

*Los Angeles v. Lyons*,
   461 U.S. 95 (1983)................................................................24

*MacNamara v. City of New York*,
   275 F.R.D. 125 (S.D.N.Y. 2011) ...............................................20

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997).......................................................6

*Mazzei v. Money Store*,
    829 F.3d 260 (2d Cir. 2016)................................................................................................14

*McLaughlin v. Am. Tobacco Corp.*,
    522 F.3d 215 (2d Cir. 2008),
    *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*,
    553 U.S. 639 (2008)........................................................................................................21

*Nourse v. County of Jefferson*,
    2020 WL 3300549 (S.D.N.Y. June 18, 2020) ...............................................................10-11

*Packard v. City of New York*,
    2019 WL 1714669 (S.D.N.Y. Apr. 16, 2019).............................................................6, 10, 13

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ..............................................................................................8

*In re Petrobras Secs.*,
    862 F.3d 250 (2d Cir. 2017)...............................................................................14, 16, 17, 20

*Pub. Emples. Ret. Sys. v. Merrill Lynch & Co.*,
    714 F. Supp. 2d 475 (S.D.N.Y. 2010).................................................................................22

*Scott v. Chipotle Mexican Grill*,
    954 F.3d 502 (2d Cir. 2020)....................................................................................... *passim*

*Scott v Quay*,
    338 F.R.D. 178 (E.D.N.Y. 2021) .............................................................................13, 19, 21

*Stertz v. Gulf Oil Corp.*,
    99 F.R.D. 74 (E.D.N.Y. 1983)..........................................................................................22

*Stinson v. City of New York*,
    282 F.R.D. 360 (S.D.N.Y. 2012) ........................................................................................8

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015)................................................................................................21

*Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*,
    546 F.3d 196 (2d Cir. 2008)................................................................................................4

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)........................................................................................................16

*Wal-Mart Stores Inc. v. Dukes*,
    564 U.S. 338 (2011)................................................................................................ *passim*

*Washington v. Wyman*,
    54 F.R.D. 266 (S.D.N.Y. 1971) ............................................................................24

**Statutes**

42 U.S.C. § 1983 ....................................................................................................2, 13

Fed. R. Civ. P. 23 ................................................................................... *passim*

**Other Authorities**

7AA Charles A. Wright et al., *Federal Practice & Procedure* § 1790 (3d ed.)
    (Westlaw 2017) ..................................................................................................21

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84
    N.Y.U. L. Rev. 97, 132 (2009) ............................................................................6

## PRELIMINARY STATEMENT

Plaintiffs' motion for class certification fails because the purported class is riven by individual facts and circumstances making class-wide fact-finding or relief impossible, and making literally thousands of mini-trials unavoidable.  Plaintiffs allege that hundreds of thousands of detainees at New York City's Central Booking facilities—detained for different amounts of time, on different days, during different times of the year, in different cells, in five different facilities, during different stages of the COVID-19 pandemic, over the course of years, and with different underlying medical conditions—were all subject to the same conditions.  But to prove conditions-of-confinement claims brought on behalf of the proposed Plaintiff class, the Court would have to conduct individual, case-by-case analyses of each putative class member's unique combination of alleged conditions and resulting injury, assessing the veracity, severity, and duration of each member's claim of constitutional harm. Even the purportedly "common" question of whether each unique combination rose to the level of an unconstitutional condition, and the answer cannot possibly be resolved in one stroke.

Plaintiffs' purported class fails Rule 23(a)'s commonality and typicality requirements. *First*, each Plaintiff alleges a unique deviation from the applicable COVID-19 guidelines.  A plaintiff who claims their cell was overcrowded cannot be classed with a plaintiff who does not so claim—and no two Plaintiffs' allegations are the same.  *Second*, Plaintiffs allege a litany of conditions, both COVID-19-related conditions and general conditions, but each Plaintiff alleges a unique combination.  The Court cannot undertake the required case-by-case analysis on a class-wide basis.  *Third*, each Central Booking facility's daily conditions are determined by the commanding officer's discretion, rather than by a standard policy.  Such discretion destroys the purported class's unity.

1

Plaintiffs' purported class fails Rule 23(b)(3)'s predominance and superiority requirements for the same reasons. A damages class would be radically inefficient because each Plaintiff will have to prove each of their individual conditions, compounded by the fact that each Plaintiff's damages would depend on unique characteristics such as their underlying medical conditions. In addition, each Plaintiff would have to prove that the particular set of governmental actors related to their detention had the requisite mental state to support a conditions-of-confinement claim.

And Plaintiffs' allegations fail to support an injunctive class under Rule 23(b)(2). Plaintiffs do not have standing to so allege. None of the named Plaintiffs are currently detained in Central Booking and none allege that they reasonably expect to be so detained in the future. Similarly, because an injunction would not remedy any present harm, relief under Rule 23(b)(2) is unavailable.

## **BACKGROUND**

Plaintiffs bring this putative class action lawsuit under Section 1983, alleging that Defendants violated Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment by failing to provide adequate protection from COVID-19 and by subjecting Plaintiffs to various other conditions in each of New York City's five Central Booking facilities. *See* Second Amended Complaint ("SAC") ¶¶ 1, 42-51. Plaintiffs also bring Section 1983 claims for failure to train and claims under the New York State Constitution and common law. *Id.* ¶¶ 74-79.

Plaintiffs allege that in the City's five Central Booking facilities the detainees are not provided with masks, are not required to wear masks, are overcrowded, cannot wash their hands, and are not screened for, tested for, or isolated because of COVID, and allege that the Central Booking facilities are not sanitized. *Id.* ¶ 35. In so alleging, Plaintiffs claim that Defendants have failed to follow all applicable guidance regarding COVID from the Center for Disease Control ("CDC"), *id.* ¶ 36, have failed to follow all applicable guidance from authorities within New York State, *e.g.*,

2

ECF 24-4 at 2 (New York City Police Department order mandating the provision of masks), and have failed to follow this Court's Amended Consent Order, *see* Plaintiffs' Memorandum of Law in Support of Motion for Class Certification ("Mot.") at 6.

Plaintiffs also allege that a litany of conditions—overlapping nearly entirely with conditions alleged in *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017)[1]—worsen the potential for COVID-19 exposure in addition to being independently unconstitutional.  SAC ¶ 1.  Those allegations include that the cells in the five different Central Booking facilities are overcrowded, unsanitary, have dirty toilets, contain vermin, lack hygienic items, that the food and drinks Defendants provide to detainees are inadequate, that the cells are either too hot or too cold while being poorly ventilated, that the detainees become sleep deprived, and that Defendants failed to prevent crimes within the cells "such as smoking marijuana and tobacco." *Id.* ¶¶ 43-51.

Plaintiffs brought suit against the City of New York and individuals purportedly responsible for the supervision of the five Central Booking facilities, including former Mayor Bill de Blasio and former Commissioner of the New York City Police Department Dermot Shea.  Plaintiffs allege that some Defendants were aware of the alleged conditions, while others were responsible for setting the relevant policies—all rising to the level of alleged deliberate indifference.  *Id.* ¶¶ 53-59.

Plaintiffs moved for a temporary restraining order and preliminary injunction on December 30, 2021, ECF 15, and Defendants opposed on January 3, 2022, ECF 23.  The Court held a hearing on the motion on January 4, 2022, and the Court entered a Consent Order governing COVID-19 precautions on January 6, 2022, ECF 27, which the Court amended on January 28, 2022, ECF 35.

---

[1] These allegations (and many of the plaintiffs) also overlap in the pending cases in *Brennan et al. v. City of New York et al.*, 19-CV-2054 (NGG) (CLP) and *Aboubakar et al. v. City of New York et al.*, 20-CV-1716 (NGG) (CLP).

Plaintiffs moved to certify a provisional class on January 6, 2022, ECF 28, which Defendants opposed on January 14, 2022, ECF 29.  The entrance of the Amended Consent order mooted Plaintiffs' motion for a temporary restraining order and Plaintiffs' motion for to certify a provisional class.  Minute Order, *Capobianco et al. v. City of New York et al.* (April 8, 2022).  Plaintiffs moved for class certification on September 16, 2022, ECF 68, which Defendants now oppose.

## ARGUMENT

For class certification, plaintiffs must satisfy the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation.  *See In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 32 (2d Cir. 2006).  A trial court must ensure, via a "rigorous analysis," that each Rule 23(a) requirement is met.  *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

Plaintiffs must also establish at least one of the two Rule 23(b) standards, depending on the nature of the relief sought.  Where plaintiffs seek to certify a damages class, they must satisfy the requirements of Rule 23(b)(3)—predominance and superiority.  *Scott v. Chipotle Mexican Grill*, 954 F.3d 502, 512-13 (2d Cir. 2020).  Where plaintiffs seek to certify a class for injunctive and declaratory relief, they must satisfy the requirements of Rule 23(b)(2), including the requirement that the relief sought be indivisible, not individualized.  *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 360 (2011).

The moving party bears the burden of proving that each requirement is satisfied by a preponderance of the evidence.  *See Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008); *Chipotle Mexican Grill*, 954 F.3d at 512-13.  "[A] court must probe behind the pleadings before coming to rest on the certification question, satisfying itself that Rule 23 compliance may be demonstrated through *evidentiary proof*."  *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (cleaned up).

Plaintiffs fail to meet Rule 23(a)'s commonality and typicality requirements because the allegations related to COVID-19 stem from individual deviations from the applicable standardized policies and because the Plaintiffs' alleged conditions depend on too many variables and too much discretion to unify the class.  Plaintiffs likewise fail to satisfy the predominance and superiority requirements under Rule 23(b)(3) because they cannot establish they are entitled to the monetary relief sought without answering several member-specific, fact-intensive questions that render the class mechanism an unfair and inefficient means of resolving what amount to highly individualized disputes.  And Plaintiffs cannot certify a class for injunctive and declaratory relief because Plaintiffs have failed to assert that they or other class members are likely to face the alleged conditions again and therefore have failed to demonstrate that they have standing or that the class as defined satisfies the requirements of Rule 23(b)(2).

## POINT I

### THE PROPOSED CLASS FAILS TO MEET THE RULE 23(A) REQUIREMENTS

Plaintiffs argue that they meet the commonality requirement because they were subject to "[a] standardized course of conduct" related to two distinct sets of allegations: COVID-19-related conditions (the "COVID allegations") and "the unlawful conditions of confinement described by the Second Circuit in *Darnell*" (the "*Darnell* allegations").  Mot. at 12-13.  The COVID allegations fail to meet the commonality and typicality requirements because Plaintiffs claim that Defendants deviated from a standardized course of conduct—CDC guidelines, Defendants' own guidelines, and this Court's consent order—so it necessarily follows that Plaintiffs allege that each Plaintiff faced an individualized course of conduct.  SAC ¶¶ 42-51 (describing conditions faced by "some" of the class members and conditions that "often" or "generally" occurred).  The *Darnell* allegations also fail to meet the commonality and typicality requirements because Plaintiffs likewise allege

individualized treatment divorced from any common policy, dependent on a host of variables, and ultimately based on the discretion of the on-duty commanding officer.

**A.      The Proposed Class Fails to Meet the Commonality and Typicality Requirements**

Rule 23(a)(2) requires that a plaintiff show "there are common questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Rule 23(a)(3) requires that the "claims … are typical of the claims … of the class."  "The commonality and typicality requirements tend to merge," *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997), because each requires that plaintiffs demonstrate injury "deriv[ing] from a unit[ar]y course of conduct by a single system."  *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)); *see also Packard v. City of New York*, 2019 WL 1714669, at *2 (S.D.N.Y. Apr. 16, 2019) (applying the same test in the typicality context).

The commonality and typicality requirements are not toothless.  The Supreme Court has clarified that plaintiffs meet the commonality requirement only when a proposed class raises questions that "generate common answers."  *Wal-Mart*, 564 U.S. 338, 350 (2011) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).  And the fact that plaintiffs' claims invoke the same legal theory does not alone establish typicality—the factual predicates of the claims must be sufficiently cohesive.  *See Packard v. City of New York*, 2019 WL 2493515, at *6 (S.D.N.Y. Mar. 8, 2019), *report and recommendation adopted*, 2019 WL 1714669 (S.D.N.Y. Apr. 16, 2019).

**1.      Plaintiffs Fail to Meet the Commonality & Typicality Requirements Because They Do Not Allege a Standardized Course of Conduct**

Plaintiffs fail to show that Plaintiffs' injuries "derive from a unitary course of conduct by a single system."  *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014) (cleaned up).  Instead, Plaintiffs demonstrate that each Plaintiff's allegations concerning their risk of

contracting COVID-19 derived from deviations from a standardized course of conduct and that each Plaintiff's *Darnell*-allegations injuries derived from individualized circumstances dependent on many variables and discretionary decisions.

Plaintiffs allege that Defendants failed to "follow any of the established guidance on how jails and correctional institutions should mitigate the risks of transmitting Covid-19." SAC ¶ 36. This guidance includes the CDC's "Interim Guidance on Management of Coronavirus," *id.* ¶ 37, and the February 2020 "Guidelines for Prevention of Exposure to Novel Coronavirus," Mot. at 14 (citing Anderson Decl., Ex. 46). While Defendants dispute this allegation, it is correct that there are numerous applicable guidelines and directives that were operative during the Class Period. For example, the New York Police Department issued an Operations Order on April 20, 2020, dictating that "a surgical mask is placed on a prisoner prior to removal to a Department facility." ECF 24-4 at 2. The basis of Plaintiffs' allegations is thus that "[n]one of the [guidance] is being followed by defendants." SAC ¶ 37, 39. In addition, the Plaintiffs allege that Defendants are violating this Court's Amended Consent Order, which mandates social distancing, mask provision, cell cleaning, and other precautions. *See* Mot. at 6; ECF 35 (Amended Consent Order). Again, while Defendants strenuously contest that allegation, if proved true, it would amount to a deviation from departmental policy, rather than adherence to it.

Defendants have followed all applicable guidance throughout the class period. ECF 24-1 at 3 (testimony from Chief Donna Jones). This includes cell cleaning, KN95 mask provision, hand sanitization, and health screening. *See id.* at 4. For example, with respect to mask provision, Chief Donna Jones testified to this Court, "when a member is brought to a Central Booking location, a KN95 mask is given to that individual." TRO Hear. Tr. 21:7-8. Because Plaintiffs dispute Defendants' compliance with existing, acceptable policies rather than whether the policies themselves

7

are constitutional, the question Plaintiffs present is whether Defendants have deviated from the applicable policies in each Plaintiff's individual case, across the five boroughs.

Some alleged deviation from a standardized course of conduct is insufficient to meet commonality. The cases that Plaintiffs cite demonstrate why. For example, in *Ebin v. Kangadis Food Inc.*, the court held that Plaintiffs established a standardized course of conduct because each injury derived from a single misrepresentation (that a product was "100% Pure Olive Oil"). *See* 297 F.R.D. at 564-65. The relevant course of conduct was a single act that applied equally to all defendants. Unlike *Ebin*, here, the alleged injuries are from *deviations* from course of conduct, namely the applicable guidelines and the Amended Consent Order. In *Stinson v. City of New York*, Plaintiffs alleged a "pattern and practice … to stop, search, seize, arrest, and issue summonses … without probable cause." 282 F.R.D. 360, 369 (S.D.N.Y. 2012). There, the Court certified a class because Plaintiffs were all allegedly subject to the same course-of-conduct by virtue of an implicit policy, but there was no unifying, usually followed written policy from which defendants deviated for each and every arrestee.[2]

*Wal-Mart Stores, Inc. v. Dukes* dictates that Plaintiffs' failure to prove systematic deviation from an acceptable policy dooms its class-certification motion. *See* 564 U.S. at 338. In that Title VII case, Wal-Mart had an "announced policy [that] forb[ade] sex discrimination." *Id.* Plaintiffs argued that Wal-Mart's allowance of "discretion by local supervisors over employment matters," coupled with the alleged similar injuries among potential class members, demonstrated commonality. *Id.* at 355. The Supreme Court disagreed, holding that individual deviations from the

---

[2] Insofar as *Chatman v. Otani* held that "Defendant's alleged failure to comply with its [COVID] Response Plan" satisfied commonality, that decision was wrong. *See* 2021 U.S. Dist. Lexis 130465 (D. Haw. July 13, 2021). The very next sentence in the opinion quotes the Ninth Circuit's direction that "the commonality requirement can be satisfied by proof of the *existence of systemic policies and practices* that allegedly expose inmates to a substantial risk of harm." *Id.* (quoting *Parsons v. Ryan*, 754 F.3d 657, 681 (9th Cir. 2014)).

operative policy forbidding sex discrimination, even with statistical evidence showing allegedly common injuries, did not show commonality. *See id.* at 356. The affidavits from potential class members, numbering 1 for each 12,500 class members, were insufficient to establish a practice of deviation from a standardized course of conduct. *Id.* at 358. Here, there were nearly 250,000 adults arrested in New York City between 2020 and 2021. Div. of Crim. Just. Servs., *Adult Arrests 18 and Older: 2012-2021* (last visited Dec. 20, 2022), https://www.criminaljustice.ny.gov/crim-net/ojsa/arrests/index.htm. Plaintiffs' 45 declarations mean that Plaintiffs have demonstrated that only a tiny fraction of class members allege a deviation from the COVID policy. Plaintiffs' deficiencies in proving commonality are compounded by the fact that their declarations show that, unsurprisingly, each plaintiff had different experiences. *Compare* Williams Decl. at 2 (offered mask), *and* Hillaire Decl. (not alleging staff were maskless), *with* Forrest Decl. at 1 (not offered mask), *and* Leroy Decl. at 2 (alleging approximately 50% of staff wore masks). Under *Wal-Mart*, these few and disparate deviations are insufficient to establish a common course of conduct.

The same issues preclude certification for Plaintiffs' *Darnell* allegations. First, Plaintiffs point to no uniform policy. Broadly, Plaintiffs allege that the cells were unsanitary and over-crowded, that Defendants provided insufficient food and water, and that the temperature of the holding cells was too hot or too cold, among other allegations. *E.g.*, Richardson Decl. at 2; Batista Decl. at 2-3. But Plaintiffs point to no uniform policy driving these allegations.

Second, the alleged injuries are driven by discretionary decision-making. In fact, each command officer at each distinct facility makes daily decisions based on current circumstances that dictate things like how often cells are cleaned and how often defendants are provided food and drinks. SAC ¶ 60 ("[T]he New York City Law Department represented that the commanding officer of a Central Booking facility is a final policymaker."). Because Plaintiffs' allegations are

derived from these discretionary decisions of each facility's commanding officer, *Wal-Mart*'s mandate that injuries derived from the exercise of discretion does not demonstrate commonality governs.  *See* 564 U.S. at 356-57.

>    **2.**    **Plaintiffs Fail to Meet the Commonality & Typicality Requirements Because There Are Too Many Individualized Variables Differentiating Each Plaintiff's Claims**

There are also individualized circumstances that defeat commonality and typicality for both the COVID and *Darnell* allegations.  In short, "the injuries here do not derive from a unitary course of conduct because of the myriad of factual variations between and among class members' claims." *Packard*, 2019 WL 1714669, at *2 (cleaned up).

The COVID allegations are subject to changing variables including the evolving under-standing of COVID and related precautions, the variables between facilities, and the daily circum-stances in each facility.  First, the NYPD has amended its COVID-19 policies over time as the scientific community's understanding has evolved.  *See* TRO Hear. Tr. 34:13-16; ECF 24 (Singh Decl. listing applicable guidance documents between March and May 2020).  That is because over the Class Period, and before the Amended Consent Order, guidance from authorities like the CDC was evolving.  *See, e.g.*, CDC, *Guidance Documents* (last visited Dec. 1, 2022), https://www.cdc.gov/coronavirus/2019-ncov/communication/guidance-list.html?Sort=Date%3A %3Adesc (listing updated guidance from March 20, 2020 through November 29, 2022).  Second, since each relevant facility has distinct layouts, the approach to effectuating social distancing may vary.  Third, each facility has distinct factual circumstances each day that makes each detainee's claims unique.  For example, how crowded a facility is depends on the hour, the day, the week, and the time of year.  *Compare* Williams Decl. at 2 (not overcrowded), *and* Kelsay Decl. (not overcrowded), *with* Pearlstein Decl. at 2 (overcrowded).  This variability defeats Plaintiffs' asser-tion of commonality and typicality.  *See Nourse v. County of Jefferson*, 2020 WL 3300549, *9-10

10

(S.D.N.Y. June 18, 2020) (denying class certification when plaintiffs' claims "depend[ed] on individualized proof regarding the activity and staffing in the booking area of the [j]ail at the time he or she was there"). The same is true for other precautions such as the provision of masks, which could vary over time based on the availability of necessary medical supplies. *See, e.g.*, Williams Decl. at 2 (offered mask).

The *Darnell* allegations are similarly too variable to establish commonality and typicality.[3] The allegations relate to the alleged cells' number of detainees, lack of ability to sleep and availability of seating, the sanitary condition of the cells, the sanitary conditions of the toilets, the alleged presence of vermin, and the alleged lack of food and water. *E.g.*, Richardson Decl. at 2; Batista Decl. at 2-3. As stated above, the number of detainees in each cell varies on a daily—even hourly—basis, so the Court should not certify a class based on crowding conditions. *See Nourse*, 2020 WL 3300549, *9-10. For example, some days may average more detainees, such as the weekends, and some months may average more detainees, such as the summer months. This is borne out by Plaintiffs' declarations. Some Plaintiffs do not allege overcrowding, *e.g.*, Williams Decl. at 2, and some Plaintiffs allege that some cells were crowded while others were not, *e.g.*, Leroy Decl. at 2. The ability to sleep varies based on available space in a cell, on available seating, on an individual's ability to sleep in different conditions, on the time of day of detention, and more. *Compare* Forrest Decl. at 2-3 (slept on the floor), *with* Maugeri Decl. at 3 (did not sleep). The conditions of the cells and toilets in between cleaning can vary depending on a number of factors, including the number of people in a cell, the manner in which each individual prisoner behaves and the amount of debris generated from each individual. *Compare* MacDonald Decl. (not alleging

---

[3] Notably, plaintiffs in *Darnell* decided not to move for class certification. *Cano v. City of New York*, 13-cv-3341 (E.D.N.Y. 2013), ECF 41.

the cells were unsanitary), *and* Williams Decl. at 2 (alleging the cell was swept and wiped down during detention), *with* Morris Decl. at 2-3 (alleging cell was unsanitary).  Likewise, the frequency of extermination to proactively prevent the presence of vermin varies based on time of day and time of the year, among other factors.  *Compare* Hernandez Decl. at 2 (alleging the presence of insects and a mouse), *with* Louis Decl. (not alleging presence of insects or mice).  Access to food and water often depends upon an individual's personal decision whether to eat or drink the pro-vided food and drinks.  *Compare* Hernandez Decl. at 3 (ate the provided cereal and drank provided water), *and* Campbell Decl. at 3 (did not eat the cereal, did not drink milk because lactose intoler-ant), *with* Lucky Decl. at 2 (allegedly not provided any food or water).  The same is true regarding the alleged temperature of the cells.  *Compare* D. Perez Decl. at 2 (cell was "freezing"), *and* Forrest Decl. at 2 (cell was "extremely hot"), *with* Johnson Decl. (not alleging cells' temperature was problematic).  And the temperature allegations will vary depending on the season in which each individual Plaintiff was detained—the facilities may be hotter in the summer and colder in the winter, or may have individualized and temporary heating and cooling issues.

Finally, these variables are compounded by the fact that Plaintiffs attempt to certify a class across five facilities and because each Plaintiff was held in a facility for different lengths of time. These variables demonstrate that while Plaintiffs may have presented common questions, each question is not resolvable by a common answer.  *See Wal-Mart*, 564 U.S. at 352.

The variables pose a particular problem because of how plaintiffs must prove unconstitu-tional conditions claims.  Each Plaintiff presents the unique question of whether on the day they were detained, the particular conditions in a particular cell in a particular facility were unconstitu-tional when also considering the length of their detention.  Under *Darnell*, a plaintiff must identify conditions that when "aggregated … produce[] the deprivation of a single identifiable human need

such as food, warmth, or exercise." *Darnell*, 849 F.3d at 30.  There may be "mutually enforcing conditions," but they must all combine to lead to the deprivation of a *single*, *identifiable* need.  *See id.*  Moreover, each claim is dependent on the "severity and duration, on a *case-by-case* basis," of each alleged condition.  *Id.* (emphasis added).  And in doing that case-by-case analysis, "the conditions must be analyzed in combination."  *Id.* at 32.

Accordingly, the Court must analyze each plaintiff's claim individually to identify and evaluate (1) of what need they allege Defendants deprived them; (2) which conditions they allege that may combine to affect the purported deprivation; (3) the severity of each Plaintiff's allegations; and (4) how long each plaintiff was allegedly subjected to such conditions.  Because the Court must analyze each claim's unique, "mutually enforcing conditions," in each unique "combination," on a "case-by-case basis," the Court cannot reach a general conclusion applicable to every Plaintiff.  *See id.* at 30, 32.

The cases underlying Plaintiffs' assertion that "[p]rison conditions cases are especially appropriate for class treatment" demonstrate why this case is uniquely ill-suited for class treatment.  Mot. at 8.  For example, in *Scott v. Quay* the plaintiffs—individuals incarcerated at the Metropolitan Detention Center—brought a negligence action related to a single power outage, lasting one week, in a single building.  338 F.R.D. 178, 182, 187-88 (E.D.N.Y. 2021).  Here, the proposed class spans nearly three years, with myriad allegations of unconstitutional conditions—ranging from COVID risks, to food provision, to temperature—across multiple facilities, which is not nearly as cohesive.  *See Packard*, 2019 WL 1714669 (holding typicality not met when alleged injuries were not limited to "a particular time, date, and location").[4]

---

[4] Plaintiffs also bring claims under § 1983, the New York State Constitution, and common law.  SAC ¶¶ 70-79.  Plaintiffs' brief supporting class certification is remarkably devoid of any argument as to why those claims are appropriate for treatment on a class-wide basis.  That failure alone should warrant denial of class certification of those claims, as Plaintiffs have failed to satisfy their burden.

## POINT II

## THE PROPOSED CLASS FAILS TO MEET THE REQUIREMENTS OF RULE 23(B)(3)

Plaintiffs seek to certify a damages class; this Court should decline to do so, as Plaintiffs have not satisfied the requirements of Rule 23(b)(3). Before a court may certify a class action under that rule, it must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Chipotle Mexican Grill*, 954 F.3d at 512-13. As with the other requirements for class certification, the party seeking class certification bears the burden of establishing, based on the preponderance of the evidence, that the predominance requirement is satisfied. *See Mazzei v. Money Store*, 829 F.3d 260, 270 (2d Cir. 2016). Plaintiffs have not met that burden here.

### A.    Individualized Issues Regarding Liability and Damages Predominate Over Common Issues

Plaintiffs have not averred sufficient evidence to establish that the few common issues amongst the class members predominate over the litany of individualized issues implicated in this action. *See supra* Point I.A.2. The predominance requirement mitigates the risk that dissimilarities amongst members of the putative class "make use of the class-action device inefficient or unfair." *In re Petrobras Secs.*, 862 F.3d 250, 270 (2d Cir. 2017) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 470 (2013)). In determining whether this requirement has been satisfied, courts assess:

1.    "the elements of the claims and defenses to be litigated";

2.    "whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief"; and

     3.      "whether the common issues can profitably be tried on a class-wide basis, or whether they will be overwhelmed by individual issues."

*Chipotle Mexican Grill, Inc.*, 954 F.3d at 512 (cleaned up); *see also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538 (2d Cir. 2016). The predominance inquiry is "far more demanding" than the commonality requirement, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 582, 623-24 (1997), and district courts have a "duty to take a close look at whether common questions predominate over individual ones," *In re Petrobas Secs.*, 862 F.3d at 270-71 (cleaned up) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)).

     Under the framework outlined above, certification of a damages class action is improper here, as Plaintiffs have failed to establish that common issues predominate over individualized issues for their claims stemming from both the COVID allegations and the *Darnell* allegations.

     **First**, this Court must assess predominance with reference to the elements of the Plaintiffs' claim. Plaintiffs principally bring claims for unconstitutional conditions under the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, SAC ¶¶ 1, 10, 42-51. Plaintiffs concede, Mot. at 11, that they cannot establish those claims unless they prove:

     1.      "[T]hat the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee"; and

     2.      "[That] the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."

*Darnell*, 849 F.3d at 35. As the Second Circuit explained in *Darnell*, "[t]his means that a pretrial detainee must satisfy two prongs to prove a claim, an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong'—perhaps better classified as a '*mens rea* prong' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id.* at 29. And because Plaintiffs do not allege that any single action by the Defendants

15

constituted a deprivation of their Due Process rights, the question is whether the conditions faced by any given class member in the "aggregate[] … rise to the level of a constitutional violation" based on their "mutually enforcing effect that produces the deprivation of a single, identifiable human need." *Id.* at 30; *see supra* Point I.A.2.

**Second**, this Court must assess whether the class members' "entitlement to relief" under each of the above elements turns on common or individual issues. *Chipotle Mexican Grill*, 954 F.3d at 512. An individual issue "is one where members of a proposed class will need to present evidence that varies from member to member," whereas a common issue "is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized class-wide proof." *In re Petrobras Secs.*, 862 F.3d at 270 (cleaned up) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

Plaintiffs do not seek to certify a class of individuals all of whom are alleged to have experienced a single set of conditions. Rather, the class as defined by the Plaintiffs includes "*[a]ll* pre-arraignment detainees in City of New York's Central Booking facilities from February 3, 2020, to the present." Mot. at 4 (emphasis added). Plaintiffs allege that each such class member was subject to some combination of the COVID allegations and the *Darnell* allegations.

As explained above, the central issue raised by Plaintiffs' COVID-allegation injuries is not whether an appropriate policy was in place, but instead whether Defendants complied with or deviated from the existing policies on any particular day with respect to each and every detainee during the past 34 months and counting. *See* Point I.A.1. Plaintiffs' *Darnell* allegations do not involve any kind of central policy, turning instead on the way in which various officials exercised their discretion and how individual employees conducted their duties hour-to-hour, day-to-day, within each of the five different facilities. SAC ¶ 60. The range of conduct addressed by both sets

16

of allegations is broad, including issues pertaining to masking; COVID testing; overcrowding; sanitation; temperature and ventilation; criminal activity within cells; whether, where, and for how long detainees were able to sleep; and whether and what type of food and drink were provided. SAC ¶¶ 35-36, 43-51.

The individualized nature of the Plaintiffs' allegations, alongside their broad class definition, foreclose the possibility that members of the class could establish liability with "the same evidence" or that their claims are "susceptible to generalized class-wide proof." *In re Petrobras Secs.*, 862 F.3d at 270 (cleaned up); *see supra* Point I.A.2. Indeed, Plaintiffs make no meaningful attempt to explain how they can establish on a class-wide basis any of the three core questions raised by their claims: (1) what combination of conditions a given detainee experienced; (2) whether said conditions amount to an objective depravation; and (3) whether Defendants subjected the detainee engaged in said conduct with at least deliberate indifference. *Darnell*, 849 F.3d at 29-30, 35.

The first question—what combination of conditions a class member experienced—is necessarily a member-specific one, as the day, time, and facility at which they were held, as well as the specific cell in which they were placed, all influenced what conditions they faced or were likely to face. *See supra* Point I.A.2. The SAC itself speaks to the deviations in conditions faced by the class members. *See* SAC ¶¶ 43-51 (describing conditions faced by "some" of the class members and conditions that "often" or "generally" occurred). Plaintiffs' declarations likewise show unique alleged conditions. *See supra* Point I.A.2. The first question therefore can only be answered with "evidence that varies from member to member." *In re Petrobras*, 862 F.3d at 270.

The second question—whether the combination of conditions faced by a class member constitute an objective deprivation—turns on the impact that said conduct had on the individual

17

detainee—specifically, whether it posed "the risk of serious damage to physical or mental sound-ness." *Darnell*, 849 F.3d at 30 (cleaned up) (quoting *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)). Nowhere have Plaintiffs attempted to argue that this question, which inherently turns on the combination of conditions faced and their effect on the individual who faced them, *id.*, can be answered on a class-wide basis where the class members are not alleged to have expe-rienced the same conduct. Once again, the declarations they attach to their brief bely the notion that they could do so. *See supra* Point II.A.2. And critically, the alleged conditions' effect on each potential plaintiff will vary based on the individual characteristics of the plaintiff. One indi-vidual may have no trouble sleeping while sitting upright, while another may claim sleep depriva-tion from such an inability. One individual may have felt the cell was overcrowded with only a few other detainees present, while others may have been less impacted by all but significant over-crowding. This is true of each of Plaintiffs' alleged conditions.

Moreover, the Plaintiffs have alleged distinct individual characteristics that will affect damages—especially with regard to the COVID claims. Courts have noted that personal charac-teristics are key to COVID-related deliberate indifference claims. *See, e.g.*, *Caraballo v. Dep't of Corr. City of New York*, 2022 WL 16555313, at *4 (S.D.N.Y. Oct. 31, 2022) ("Those circum-stances include where a detainee has an underlying medical condition, making him 'particularly vulnerable' to unreasonable risk of serious damage to his health."); *Herbert v. Smith*, 2021 WL 3292263, at *9 (S.D.N.Y. Aug. 2, 2021) ("For instance, a particularly vulnerable inmate with a significant underlying medical condition may fit the bill [for a COVID conditions-of-confinement claim]."). Here, each Plaintiff is uniquely situated. Some allege they have high blood pressure. *See, e.g.*, Capobianco Decl. at 1; Bosco Decl. at 1. Most do not. Some allege they have asthma. *See, e.g.*, Louis Decl. at 1; Perez Decl. at 1-2. Most do not. Some allege they are lactose intolerant.

*See, e.g.*, Williams Decl. at 3; Forrest Decl. at 3.  Most do not.  And some allege other issues, like that the officers refused to allow a detainee to take medication for a seizure-related illness, *see* Forrest Decl. at 1, or that the conditions of Brooklyn Central Booking caused a deep vein throm-bosis, Lucky Decl. at 3.  Each particular damages inquiry will be unique, requiring the Court to analyze medical records and expert opinions about the connection between each alleged medical condition and COVID-19 infection.[5]

The final question—whether the Defendants or their relevant officers or employees sub-jected a class member to these conditions with deliberate indifference—likewise cannot be estab-lished on a class-wide basis.  Plaintiffs were detained across five separate facilities over a series of years, each of which was supervised by a different group of officials and operated by a different group of employees.  For any given class member to establish the mens rea element here, they must therefore establish the mental state of the specific officials or employees responsible for the facility within which they were detained during the specific time at which they were detained. Plaintiffs have not explained how detainees of a single facility could make such a showing without reliance on individualized evidence, let alone how the class as a whole could do so across all five facilities.

In arguing to the contrary, Plaintiffs rely heavily on *Scott v Quay*, 338 F.R.D 178 (E.D.N.Y. 2021).  But the facts at issue in that case highlight the failure in Plaintiffs' arguments.  There, the "claims all involve[d] allegations of negligence against the same actors, arising from the same conduct, affecting claimants who were all housed in the same building at the same time in the same or similar ways." *Id.* at 190.  Here, plaintiffs were held in five separate facilities for limited periods

---

[5] Moreover, not a single named Plaintiff alleges that that they actually were infected with COVID-19, affecting any damages inquiry and Plaintiffs' suitability to serve as class representatives.

of time, during different times of day, and over the course of over two years, and the claims involve conduct by an expansive and changing set of actors depending on when and where the individual was held.[6]

Thus, as explained above, Plaintiffs' claims turn on a series of individualized issues that infect every aspect of their entitlement to relief under *Darnell*.

**Third**, this Court must determine whether any "common issues will be overwhelmed by the individual issues" noted above, such that "the common issues can[not] profitably be tried on a class-wide basis." *Chipotle Mexican Grill*, 954 F.3d at 512 (cleaned up). The common issues raised by Plaintiffs' claims are few and far between, concerning only whether the class member was in fact detained in one of the five facilities after February 3, 2020 and whether they were subject to some sort of adverse condition while detained. But Plaintiffs cannot succeed on their claims with such generalized facts alone, *Darnell*, 849 F.3d at 29-30, and the "common harm[s] suffered by potential plaintiffs" are not enough to establish predominance where, as here, "individualized questions" key to plaintiffs' ability to state a claim "permeate the litigation." *In re Petrobras*, 862 F.3d at 270.

Plaintiffs seek to avoid this conclusion by framing the "unique injuries" suffered by the class members from "their experiences in the Central Booking facilities" as "individualized

---

[6] Plaintiffs' other cited cases, Mot. at 19, likewise fail to support certification here. In *Brown v. Kelly*, the Second Circuit held that the fact individualized inquiries would be required "with respect to *some* of the plaintiffs and *some* of the claims" did not prevent the district court from certifying the class where, the class members' claims all flowed from the City's policy of enforcing a single unconstitutional loitering law. 609 F.3d 467, 482-84 (2d Cir. 2010) (emphasis added). But unlike in *Brown*, Plaintiffs' claims here do not turn on injury stemming from a "single policy of the defendants," and thus lack the "strong commonality of the violation and the harm" that was present in *Brown*. *Id.* at 484; *see also MacNamara v. City of New York*, 275 F.R.D. 125, 146 (S.D.N.Y. 2011) (certifying a Rule 23(b)(3) class premised on application of a uniform policy); *Hill v. County of Montgomery*, 2018 WL 3979590 (N.D.N.Y. Aug. 20, 2018) (same). And in *Butler v. Suffolk County*, the court certified one class per facility at issue and held that, unlike here, the individualized issues solely concerned damages, not liability itself. 289 F.R.D. 80, 98, 102 (E.D.N.Y. 2013).

20

damages." Mot. at 20 (quoting *Scott*, 338 F.R.D. at 190). But, as explained above, these individual experiences do not simply concern the degree of damages appropriate for any given class member; they go to the core of whether the Defendants are liable to any given class member under claims that turn on both the specific combination of conduct faced by each individual and the unique harm suffered by those individuals as a result. *See Darnell*, 849 F.3d at 29-30, 35. Because the few common issues identified above are not "more substantial than [these] individual ones," the predominance requirement is not satisfied here. *Chipotle Mexican Grill*, 954 F.3d at 513.

In light of the above, this Court should deny Plaintiffs' motion to certify a damages class under Rule 23(b)(3).[7]

## B.    The Differences Between Class Members Render a Class Action an Inferior Method of Adjudicating This Controversy

Plaintiffs also have not established that a class action is "a superior means of adjudication," as is required to satisfy Rule 23(b)(3). *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015). The superiority requirement is assessed with reference to: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by ... class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

---

[7] Plaintiffs argue in the alternative that this Court should certify a liability-only class under Rule 23(c)(4). Mot. at 24–25. But it is well accepted that issue classing "should not be invoked merely to postpone confronting difficult certification questions," 7AA Charles A. Wright et al., *Federal Practice & Procedure* § 1790 (3d ed.) (Westlaw 2017), and thus issue classing is generally inappropriate where a "number of questions ... would remain for individual adjudication" even after certifying a liability-only class, *In re LIBOR-Based Fin. Instrument Antitrust Litig.*, 299 F. Supp. 3d 430, 464 (S.D.N.Y. 2018) (omission in original) (quoting *McLaughlin v. Am. Tobacco Corp.*, 522 F.3d 215, 228 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008)). As explained above, the individual issues that arise in this case concern liability itself, not merely damages, and so certifying a liability-only class would nonetheless require this Court to attempt to resolve individual issues on a class-wide basis. Issue classing is therefore inappropriate here. *Id.*; *see also Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 589 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x 3 (2d Cir. 2015).

Plaintiffs argue that the third factor—desirability of concentration in this forum—weighs in favor of granting certification here because "the majority of Plaintiffs and the putative Class" were detained in facilities in this district.  Mot. at 21.  But Plaintiffs have not explained how, in a system defined by discretionary decisionmaking on a facility-by-facility basis, proceeding with the proposed class in this forum is superior to an action or actions localized in the forum where each of the plaintiffs were held.  And given the array of individual issues presented in this case, as laid out above, certification of a Rule 23(b)(3) class raises serious manageability concerns that weigh against a finding of superiority.  *See Stertz v. Gulf Oil Corp.*, 99 F.R.D. 74, 76 (E.D.N.Y. 1983).  For this and the reasons noted above, this Court should deny Plaintiffs' motion to certify a class under Rule 23(b)(3).

## POINT III

### THE PROPOSED INJUNCTIVE CLASS CANNOT BE MAINTAINED UNDER RULE 23(B)(2)

Plaintiffs also ask this Court to certify an injunctive class action pursuant to Rule 23(b)(2), seeking "a declaratory judgment that the conditions of confinement in the City's Central Booking facilities during the Class Period were unconstitutional" and "an injunction requiring defendants to remediate the unconstitutionally inhumane conditions."  SAC ¶ 10.  This Court should also refuse to certify that class, as Plaintiffs have failed to establish standing to seek prospective relief, and in any event the proposed class does not satisfy the requirements of Rule 23(b)(2).

***Standing.***  Plaintiffs have wholly failed to satisfy their burden to establish standing to seek prospective relief.  Even in the class context, standing remains a "threshold question—antecedent to class certification."  *Pub. Emps. Ret. Sys. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 480-481 (S.D.N.Y. 2010); *see also Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 185 n.14 (2d Cir. 2020) ("Because we conclude that none of the named plaintiffs has standing to pursue their

claims for prospective relief, the class … necessarily fails as well.").  To establish Article III stand-ing in the class context, at least one named plaintiff must satisfy the three core requirements of injury-in-fact, causation, and redressability with respect to each claim.  *Hyland v. Navient Corp.*, 48 F.4th 110, 117-18 (2d Cir. 2022).  And where, as here, the class seeks prospective relief, the injury-in-fact requirement can only be satisfied by an allegation of future injury that is "certainly impending" or where "there is a substantial risk that the harm will occur."  *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (cleaned up); *see also Berni v. Barilla S.p.A*, 964 F.3d 141, 146-47 (2d Cir. 2020) (same); *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 275 (E.D.N.Y. 2021) ("Because plaintiff failed to allege any imminent future harm, the Court concludes that plaintiff lacks standing to seek injunctive relief.").  Plaintiffs have not made any such allegations.

Countless paragraphs within the SAC speak to *past* injuries allegedly suffered by Plaintiffs and other class members who were *previously* detained in the booking facilities at issue.  *See, e.g.*, SAC ¶¶ 1, 17 (defining the class as "persons who *were detained*" (emphasis added)); *id.* ¶¶ 42-51 (describing the conditions to which the class members were allegedly subject); *id.* ¶¶ 62-79 (stating claims solely in terms of past harms).  Notably absent from the SAC, however, are any allegations that speak to the likelihood that the Plaintiffs are likely to experience these conditions again.  And although Plaintiffs claim that "they and the other members of the Class were and continue to be subjected to Defendants' unconstitutional practices and policies," Mot. at 23, they do not identify a single named plaintiff that remains detained in the relevant facilities, nor do they explain how any such plaintiff "continue[s] to be subjected" to the alleged practices.

Plaintiffs cannot sidestep this deficiency by broadly defining the class; the named plaintiffs themselves—not unidentified class members—must allege facts sufficient to confer standing.  *See*

23

*Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("Named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (cleaned up)); *Washington v. Wyman*, 54 F.R.D. 266, 271-72 (S.D.N.Y. 1971) (same). Speculative claims about potential for future detention are likewise insufficient: "It is the reality of the threat of [impending] injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions." *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983); *see also Berni*, 964 F.3d at 147 ("[I]f some future injury is merely conjectural or hypothetical—then plaintiffs will lack the kind of injury necessary to … establish standing.").

Neither the SAC nor Plaintiffs' brief articulates a likelihood of future harm. In other words, Plaintiffs have not attempted to argue, let alone plausibly allege, that even a single named Plaintiff is likely to be detained in Central Booking once again and, while detained, experience the same or similar conditions, including but not limited to contracting COVID-19 while in NYPD custody. That failure warrants denial of Plaintiffs' proposed injunctive class. *See, e.g.*, *Dorce*, 2 F.4th at 95; *Lamont*, 970 F.3d at 185 n.14.

***Rule 23(b)(2).*** For the same reasons, Plaintiffs have failed to demonstrate that all class members stand to benefit from the requested injunction, as is required to demonstrate that the relief sought is indivisible. An injunctive class action "may be certified under Rule 23(b)(2) in a single circumstance: when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Hyland*, 48 F.4th at 118-19. The Second Circuit has made clear that this standard is not satisfied unless "a single injunction or declaratory judgment would provide relief to *each member* of the class." *Berni*, 964 F.3d at 146 (emphasis added) (quoting

24

*Wal-Mart*, 564 U.S. at 360).  Thus, "a class may not be certified under Rule 23(b)(2) if any class member's injury is not remediable by the injunctive or declaratory relief sought." *Hyland*, 48 F.4th at 119 (quoting *Berni*, 964 F.3d at 146).

The core question, then, is whether "each of the [former detainees] likely to be harmed by [Defendants] in the imminent future absent injunctive relief?" *Berni*, 964 F.3d at 147. The is plainly, "No."  As noted above, Plaintiffs have not alleged that a single named Plaintiff, let alone every member of the class, is likely to be detained or face the alleged conditions again.  Nor have they explained how they stand to benefit from the relief sought in the event that they are not subsequently detained in one of the facilities at issue.

Plaintiffs therefore have not met their burden of establishing that the injunctive or declaratory relief sought would provide relief to "*each member* of the class." *Berni*, 964 F.3d at 146 (emphasis added).  Absent an unwarranted assumption that Plaintiffs and the class members are all but certain to be detained again, it is highly likely that most if not all of the class members' injuries would not be remedied by the relief sought, making certification under Rule 23(b)(2) inappropriate. *See id.* at 149 (denying (b)(2) certification where "not every member of [the class] stands to benefit from the [injunctive relief sought]"); *Hyland*, 48 F.4th at 119.

## **CONCLUSION**

The Plaintiffs' Motion for Class Certification should be denied.

Dated: December 21, 2022
     New York, NY

                            HON. SYLVIA O. HINDS-RADIX
                            Corporation Counsel of the
                             City of New York
                            Attorney for Defendant
                            100 Church Street
                            New York, New York 10007
                            (212) 356-0871

                    By:    /s/
                            Mark G. Toews
                            Cindy Singh
                            Wynee Ngo
                            Assistant Corporation Counsel

26