21-cv-6125 (NGG) (CLP)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CAPOBIANCO *et al.*,

                                                                        Plaintiffs,

- against -

THE CITY OF NEW YORK *et al.*,

                                                                        Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION PLAINTIFFS' PROPOSED AMENDED CLASS**

***HON. SYLVIA O. HINDS-RADIX***
*Corporation Counsel of the City of New York*
    *Attorney for Defendants*
    *100 Church Street*
    *New York, N.Y. 10007*

    *Of Counsel:  Mark G. Toews*
                         *Cindy Singh*
                          *David Kaplan*
                          *Jason Imbiano*

    *Tel:  (212) 356-0871*
    *Matter No. 2021-034369*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................II

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT

    THE PROPOSED AMENDED CLASS FAILS TO MEET THE PREDOMINANCE REQUIREMENT OF RULE 23(B)(3)................................................................................................................... 1

    A.    Individualized Issues Regarding Damages and Liability Predominate Over Common Issues .................................................. 2

    B.    Pursuant to the Second Circuit's holding in Darnell v. Pineiro, Plaintiffs Must set forth Particular Evidence in order to Demonstrate that Unconstitutional Conditions of Confinement have occurred, which, in the Instant Analysis, would Overwhelm Judicial Economies ......................................... 5

    C.    The Court's recent decision in *Heggs v. City of New York* demonstrates clearly why class certification here should be denied under the predominance inquiry………………..………………………………………..............7

CONCLUSION................................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**                                                                                                                        **Pages**

*Caraballo v. Dep't of Corr. City of New York*,
  2022 WL 16555313
  (S.D.N.Y. Oct. 31, 2022) ...........................................................................................3

*Darnell v. Pineiro*,
  849 F.3d 17 (2017)............................................................................................4, 6, 7

*Heggs v. City of New York*,
  2024 U.S. Dist. WL 759439
  (E.D.N.Y. February 23, 2024) .......................................................................7, 8

*LaReau v. MacDougall*,
  473 F.2d 974 (2d Cir. 1972)....................................................................................6

*In re Petrobras Secs.*,
  862 F.3d at 270 ...............................................................................................3, 4

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)..............................................................................................3

**Statutes**

Fed. R. Civ. P. 23(a) ...........................................................................................1

Fed. R. Civ. P. 23(b)(3)....................................................................................1, 2

# PRELIMINARY STATEMENT

Defendants submit this memorandum of law pursuant to the Court's February 20, 2024 Order, directing the Parties to submit additional briefing regarding whether Plaintiffs' revised damages class meets Rule 23(b)(3)'s predominance requirement. As set forth below, Plaintiffs' amended proposed class period, which spans more than three years, does nothing to cure the infirmities of Plaintiffs' Motion for Class Certification as originally conceived, and still falls well short of satisfying the Second Circuit standard for predominance. In short and put plainly, a damages class spanning more than three years, spread geographically across all five City Central Booking facilities, would be radically inefficient to manage, and is rife with a litany of fact-specific issues, insofar as each Plaintiff would have to demonstrate the elements and degree of severity concerning each of the individual conditions to which they were purportedly subjected—a problem compounded by the fact that each putative class member's damages would depend on unique individual characteristics, including underlying medical conditions and needs. Moreover, each Plaintiff would have to prove that the particular individual, or group of individuals, who had involvement with the conditions of their confinement possessed the requisite mental state to support a conditions of confinement claim. These individualized elements and issues overwhelm judicial economies, and therefore, for many of the same reasons set forth in Defendants' Opposition to Plaintiffs' Motion, class certification should be denied.

# ARGUMENT

### THE PROPOSED AMENDED CLASS FAILS TO MEET THE PREDOMINANCE REQUIREMENT OF RULE 23(B)(3)

Despite the Court throwing Plaintiffs a lifeline to cure the deficiencies in their original motion, Plaintiffs have failed to seize the opportunity. Whereas Plaintiffs could arguably have sufficiently truncated their class period to satisfy the Court's concerns, Plaintiffs have not satisfied

1

the predominance requirement of Rule 23(b)(3).[1]  Certifying a 23(b)(3) class requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3.)  While Plaintiffs have truncated the proposed class period, from 2020 to the present, <u>to February 3, 2020 through March 1, 2023</u>, the class is still too large and unwieldy, and individual issues still predominate over common issues. For these reasons, their Motion for Class Certification should be denied.

    **A.    Individualized Issues Regarding Damages and Liability Predominate Over Common Issues**

As was properly highlighted by this Court when rejecting Plaintiffs' proposed class in the related cases of *Brennan-Aboubakar*, "the degree of injury (and therefore damages) for each Proposed Class member will depend on many factors".[2]  Insofar as this analysis was fatal to Plaintiffs' Motion for Class Certification in *Brennan-Aboubakar*, *a fortiori*, the immediate matter, which concerns not only Brooklyn but all five Central Bookings facilities, would necessarily be overwhelmed by class-wide adjudication.

Plaintiffs have alleged distinct individual characteristics that will affect damages—especially regarding the COVID claims, which overwhelm any efficiency gained by class adjudication.  Courts have noted that personal characteristics are key to COVID-related deliberate

---

[1] Defendants maintain their position that Plaintiffs' amended class fails to meet the 23(a) requirements of commonality and typicality, and the 23(b)(3) requirement of superiority. *See* Defendants' Opposition to Plaintiffs' Motion For Class Certification and Defendants' Objections to the Report and Recommendation, ECF Nos. 103, 122.

[2] Such as: "length of detention"; "the recency of the facility's cleaning and maintenance"; "how crowded the cells were"; "whether the Proposed Class member was detained with inmates that posed a risk to health or safety"; "the condition of the toilets at the facility"; "where in the facility they were detained"; "whether they were detained in the winter or summer"; "whether they were detained when the facility as a whole was relatively crowded"; as well as, "idiosyncratic characteristics of each Proposed Class member", such as medical conditions. *Aboubakar* Order, ECF No. 112, at 27.

indifference claims. *See, e.g.*, *Caraballo v. Dep't of Corr. City of New York*, 2022 WL 16555313, at *4 (S.D.N.Y. Oct. 31, 2022) ("Those circumstances include where a detainee has an underlying medical condition, making him 'particularly vulnerable' to unreasonable risk of serious damage to his health."). Here, each Plaintiff is uniquely situated. For example, some allege they have high blood pressure. *See, e.g.*, Capobianco Decl. at 1; Bosco Decl. at 1. Most do not. Some allege they have asthma. *See, e.g.*, Louis Decl. at 1; Perez Decl. at 1-2. Most do not. And some allege other issues, for example, that the officers refused to allow a detainee to take medication for a seizure-related illness, *see* Forrest Decl. at 1, or that the conditions caused a deep vein thrombosis, *see* Lucky Decl. at 3. Each particular damages inquiry will be unique, requiring the Court to analyze medical records and expert opinions about the connection between each alleged medical condition and COVID-19 infection. Therefore, class-wide adjudication would be exceedingly inefficient.

  This Court must assess whether the class members' "entitlement to relief" under each of the above elements turns on common or individual issues. *Chipotle Mexican Grill*, 954 F.3d at 512. An individual issue "is one where members of a proposed class will need to present evidence that varies from member to member," whereas a common issue "is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized class-wide proof." *In re Petrobras Secs.*, 862 F.3d at 270 (cleaned up) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). Here, the putative class includes *all* pre-arraignment detainees in the City Central Booking facilities from February 3, 2020, to March 1, 2023. *See* February 20, 2024 Letter, ECF No. 137. As such, the conditions experienced by each individual would be necessarily diverse.

  Further, the central issue raised by Plaintiffs' COVID-allegation injuries is not whether an

3

appropriate policy was in place, but instead whether Defendants complied with or deviated from the existing policies on any particular day with respect to each and every detainee during the entire class period. *See* SAC ¶¶ 36, 37, 39. Plaintiffs' *Darnell* allegations do not involve a central policy, but turn instead on the way in which various officials exercised their discretion and how individual employees conducted their duties hour-to-hour, day-to-day, within each of the five different facilities.[3] SAC ¶ 60.

The individualized nature of the Plaintiffs' allegations, alongside their broad class definition, foreclose the possibility that members of the class could establish liability with "the same evidence" or that their claims are "susceptible to generalized class-wide proof." *In re Petrobras*, 862 F.3d at 270 (cleaned up). Indeed, Plaintiffs make no meaningful attempt to explain how they can establish on a class-wide basis any of the three core questions raised by their claims: (1) what combination of conditions a given detainee experienced; (2) whether said conditions amount to an objective depravation; and (3) whether Defendants subjected the detainee engaged in said conduct with at least deliberate indifference. *Darnell v. Pineiro*, 849 F.3d 17, 29-30, 35 (2d. Cir. 2017).

The first question—what combination of conditions a class member experienced—is necessarily a member-specific one, as the day, time, and facility at which they were held, as well as the specific cell in which they were placed, all influenced what conditions they faced or were likely to face. The SAC itself speaks to the deviations in conditions faced by the class members. *See* SAC ¶¶ 43-51 (describing conditions faced by "some" of the class members and conditions

---

[3] The range of conduct addressed by both sets of allegations is broad, including issues pertaining to masking; COVID testing; overcrowding; sanitation; temperature and ventilation; criminal activity within cells; whether, where, and for how long detainees were able to sleep; and whether and what type of food and drink were provided. SAC ¶¶ 35-36, 43-51.

4

that "often" or "generally" occurred).[4]

The COVID allegations are also subject to changing variables including the evolving understanding of COVID and related precautions, the variables between facilities, and the daily circumstances in each facility. First, the NYPD has amended its COVID-19 policies over time as the scientific community's understanding has evolved. *See* TRO Hear. Tr. 34:13-16; ECF No. 24 (listing applicable guidance documents between March and May 2020). That is because over the Class Period, guidance from authorities like the CDC was evolving.[5] Second, since each facility has distinct layouts, the approach to effectuating social distancing may vary. Third, each facility has distinct factual circumstances each day that makes each detainee's claims unique. For example, how crowded a facility is depends on the hour, the day, the week, and the time of year. *Compare* Williams Decl. at 2 (not overcrowded) *with* Pearlstein Decl. at 2 (overcrowded). The same is true for other precautions such as the provision of masks, which could vary over time based on the availability of necessary medical supplies. *Compare* Williams Decl. at 2 (offered mask) *with* Forrest Decl. at 1 (not offered mask). Therefore, this Court should hold that Plaintiffs

---

[4] Plaintiffs' declarations likewise show unique alleged conditions. For example, the conditions of the cells and toilets in between cleaning can vary depending on a number of factors, including the number of people in a cell, the manner in which each individual prisoner behaves and the amount of debris generated from each individual. *Compare* MacDonald Decl. (not alleging the cells were unsanitary) *and* Williams Decl. at 2 (alleging the cell was swept and wiped down during detention), *with* Morris Decl. at 2-3 (alleging cell was unsanitary). The frequency of extermination to proactively prevent the presence of vermin varies based on time of day and time of the year, among other factors. *Compare* Hernandez Decl. at 2 (alleging the presence of insects and a mouse) *with* Louis Decl. (not alleging presence of insects or mice). The same is true regarding the alleged temperature of the cells. *Compare* D. Perez Decl. at 2 (cell was "freezing") *and* Forrest Decl. at 2 (cell was "extremely hot"), *with* Johnson Decl. (not alleging problematic temperatures). And, the temperature allegations will vary depending on the season in which each individual Plaintiff was detained—the facilities may be hotter in the summer and colder in the winter, or may have individualized and temporary heating and cooling issues.

[5] *See, e.g.*, https://stacks.cdc.gov/view/cdc/116915 (last used on March 15, 2024) (aggregating "Guidance on prevention and management of coronavirus disease 2019 (COVID-19) in correctional and detention facilities", from 2020 through 2022)

5

cannot demonstrate that class issues predominate over individual issues, and, thus, class certification should be denied.

  **B.** **Pursuant to the Second Circuit's holding in *Darnell v. Pineiro*, Plaintiffs Must set forth Particular Evidence in order to Demonstrate that Unconstitutional Conditions of Confinement have occurred, which, in the Instant Analysis, would Overwhelm Judicial Economies.**

  Plaintiffs principally bring claims for unconstitutional conditions under the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, SAC ¶¶ 1, 10, 42-51. As the Second Circuit explained in *Darnell v. Pineiro*, 849 F.3d 17, in order to demonstrate violations of the Fourteenth Amendment, in the conditions context, "a pretrial detainee must satisfy two prongs to prove a claim":

- an **objective prong** showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process; and

- a **subjective prong**—perhaps better classified as a *mens rea* prong or mental element prong—showing that the officer acted with at least deliberate indifference to the challenged conditions.

*Id.* at 29 (cleaned up).[6]

  The objective prong, alone, would overwhelm judicial economies—as Plaintiffs would need to demonstrate that the "severity and duration" of alleged unsanitary conditions rose

---

[6] *Darnell* further set forth that the Court must determine whether the combination of conditions faced by Plaintiffs constitute an objective deprivation, which turns on the impact that said conduct had on the individual detainee—specifically, whether it posed "the risk of serious damage to physical or mental soundness." *Darnell*, 849 F.3d at 30 (cleaned up) (quoting *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)). Nowhere have Plaintiffs attempted to argue that this question, which inherently turns on the combination of conditions faced and their effect on the individual who faced them, *id.*, can be answered on a class-wide basis where the class members are not alleged to have experienced the same conduct.

6

to an unconstitutional degree, "**on a case-by-case basis**". *Id.* at 30 (emphasis added). Plaintiffs were detained across five separate facilities, over three years, and each were supervised by a different group of officials and operated by a different group of employees. Unlike *Darnell*, which consisted of twenty (20) plaintiffs, **the instant case would encompass over 100,000 class members, and an even higher number of Central Booking visits, since many putative class members were arrested multiple times during the class period**. Further, and at least as daunting as the objective prong, any given class member would be required to establish the *mens rea* element of the specific officials or employees responsible for the facility within which they were detained, and during the specific time at which they were detained. Under the *mens rea* standard established by *Darnell*, Plaintiffs would still need to demonstrate that the relevant actors possessed "deliberate indifference", *id.* at 36, a burden which is unworkable at the level of class adjudication, where, as here, discretion and responsibility were dispersed.

      **C.    The Court's Recent Decision in *Heggs v. City of New York* Demonstrates Clearly Why Class Certification Here Should be Denied Under the Predominance Inquiry.**

In a recent decision, *Heggs v. City of New York*, 2024 U.S. Dist. WL 759439 (E.D.N.Y.), February 23, 2024) (alleging that NYPD's arrest-processing practices discriminate against individuals with mobility disabilities), Judge Gujarati denied plaintiffs' Motion for Class Certification.

Specifically, Judge Gujarati (adopting Magistrate Judge Merkl's R&R, which also found that Plaintiffs could not meet the burden for standing[7]) rejected plaintiffs' theory that

---

[7] Here, Plaintiffs claims suffer from the same deficiencies as in *Heggs*. In *Heggs*, the Court noted that "under Second Circuit law a Plaintiff cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he will be injured in the future." *Heggs v. City of New York*, 2023 U.S. Dist. LEXIS 149647, at 29 (cleaned up). The R&R further found that the varied and individualized damages—inherent to a large putative class of individuals with diverse characteristics and needs, at different locations throughout the City, and on different dates, at different times of day, and over a multi-year period—would

7

predominance existed by virtue of their overarching assertion that all putative class members shared a certain characteristic (i.e., a mobility disability) and encountered allegedly similar unlawful conditions (e.g., failure to train personnel regarding provision of accommodations to mobility disabled arrestees, and failure to accommodate, etc.). Here, the putative class is far more diverse (insofar as it consists of the entire population of Central Booking inmates) and casts a far wider net of alleged unlawful conditions than a mere failure to train and accommodate. Thus, here, individual issues predominate over class issues.

With respect to damages, the Court found that judicial economies would not be achieved by analyzing each putative class member's claim that they suffered, "inter alia, physical and mental pain, suffering, humiliation and mental anguish", *Heggs v. City of New York*, 2023 U.S. Dist. LEXIS 149647, at 64, stating, "attempting to ascertain 2,000 or more class members' respective damages would significantly amplify the number of issues in dispute and impede judicial economy and efficiency given the various factual questions unique to each potential class member." *Id.* at 65. Here, the putative class is at least fifty times greater than as estimated in *Heggs*, far more diverse in characteristics and needs than in *Heggs*, and Plaintiffs allege wider ranging allegations of unlawfulness. Therefore, the damages analysis clearly weighs in favor of denying class certification.

Finally, the Court held that the causes of action asserted by Plaintiffs, including violations of the Americans with Disabilities Act and the Fourth Amendment, required Plaintiffs to demonstrate specific elements on a case by case basis, such that any judicial economies achieved by class adjudication would be overcome by the necessary factual inquiries Therefore, class

---

necessarily predominate over class damages, such that class adjudication would become overwhelming and inefficient.

8

adjudication is untenable when analyzing varied claims against a multitude of City employees and officials at various locations, and thus class certification would be improper here.

## CONCLUSION

The Plaintiffs' Amended Motion for Class Certification should be denied.

Dated:   New York, New York
         March 15, 2024

                **HON. SYLVIA O. HINDS-RADIX**
                Corporation Counsel of the City of New York
                *Attorney for Defendants*
                100 Church Street
                New York, New York 10007
                (212) 356-0871

By:   /s/
      Mark G. Toews
      Cindy Singh
      Jason Imbiano
      David Kaplan
      *Assistant Corporation Counsel*